[Crim. No. 1414.   First Appellate District.   Division One.—January 25, 1928.]

THE PEOPLE, Respondent, v. J. B. WINTHROP, etc., Appellant.

Myron Harris and Leon A. Sullivan for Appellant.

U. S. Webb, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Respondent.

TYLER, P. J.—Appellant was prosecuted and convicted upon four counts contained in an information charging a felony. The first alleged a violation of section 476 of the Penal Code relating to the making, passing, or uttering of fictitious checks; the second, third and fourth charge a violation of section 470 of the same code relating to forgery. The charging parts of the information read, in substance, as follows: First count: That J. B. Winthrop violated section 476 of the Penal Code in that he did, at the county of Alameda, state of California, knowingly and fraudulently, make, pass, utter, and publish a fictitious check, with intent to defraud the Central National Bank of Oakland, a corporation, the First National Bank of Minnesota, a corporation, and the B. F. Nelson Mfg. Co., a corporation, and each of them. The check was set out in haec verba, and reads as follows:

"No. 16652 S. 795.
"Minneapolis, Minn., July 27, 1926, 192—.
"The B. F. Nelson M'fg. Co.
  "Pay to the order of J. B. Winthrop $750.00 Dollars
                      "THE B. F. NELSON M'FG. CO.
                          "By ROBT. E. LITTLE,
                      "Vice President & Treasurer.
"To First National Bank
  "Minneapolis, Minn.   17-2."

The nonexistence of the individual Robert E. Little was then alleged and that defendant knew this fact and also knew that at the time the check was passed that it was fictitious. Second count: That J. B. Winthrop violated section 470 of the Penal Code in that he did, at the county of Alameda, state of California, wilfully, unlawfully, and with intent to defraud Central National Bank of Oakland, a corporation, First National Bank, Minneapolis, Minnesota, a corporation, and the B. F. Nelson Mfg. Co., a corporation, and each of them, sign the name of Robt. E. Little to the check in count one set forth (the check again follows *in haec verba*) and that said name was known by defendant to be then and there the name of a fictitious person and that he had no authority to do so. Third count: That J. B. Winthrop violated section 470 of the Penal Code in that he did, at the county of Alameda, state of California, with intent to defraud the Central National Bank, a corporation, First National Bank, Minnesota, a corporation, and the B. F. Nelson Mfg. Co., a corporation, and each of them, wilfully, feloniously, and falsely make, alter, and forge and counterfeit the check in count one of the information referred to (the check is again set forth). Fourth count: That J. B. Winthrop violated section 470 of the Penal Code, in that he did, at the said county of Alameda, wilfully, unlawfully, and feloniously, utter, publish, and pass to said Central National Bank of Oakland, a corporation, as true and genuine the check in count one of the information referred to (check set out in detail). And that said check then and there was and known by said J. B. Winthrop to be false, altered, forged, and counterfeit and was uttered published, and passed with intent to prejudice, damage, and defraud the Central National Bank of Oakland and other

corporations named and each of them. As above indicated, all four counts were based upon the single particular check. Defendant pleaded not guilty to each count. He was tried by a jury and found guilty upon all four counts. A motion for a new trial was made and denied and defendant was sentenced to the state prison for the term prescribed by law. The offenses being one transaction, the judgment declared that the sentences run concurrently. Defendant appeals from the order and judgment. So much of the evidence as is necessary to a consideration of the points urged for a reversal show that defendant visited the Central National Bank and consulted the manager for space in the building. At the conclusion thereof he proceeded to the bank proper and was introduced by the manager to the assistant cashier. At this time he opened an account in the bank, depositing $100 in currency. He returned a few days later and presented to the cashier a check for $1,000 made out to the G. F. Nelson Manufacturing Co. Defendant represented to the bank that he was a representative of that company. The bank received the check on deposit. Defendant thereupon presented another check for $750 and asked that it be and it was cashed. This check was the one upon which the information is based. To prove intent the prosecution showed that about the same time defendant visited the Gilchrist Furniture Company and made the same representations to that company concerning his position with the Nelson company. He selected a rug of the value of $56 and tendered a fictitious check for $150 and received the difference in change. He also under the same misrepresentations cashed a check of like character with the Maxwell Hardware Company for $187.50. During his operations he visited the Broadway-Grand Branch Bank of Italy and interviewed the assistant cashier. He also informed him that he was the representative of the Nelson company and desired to bank with his institution and requested a statement of the bank's affairs so that he could forward it to his company. He returned a little later with two envelopes bearing air-mail marks. From the first one he extracted a check for $1,500 payable to the Nelson Company and deposited it to the credit of that company. He then opened the other letter and drew therefrom a check made payable to himself for

$750. He informed the cashier that he needed funds with which to purchase office furniture and the cashier advanced him $550 on the check, the balance being placed to his credit. An inspector of the Oakland police department testified that he had gone to Texas with extradition papers to bring defendant back to California, from which state he had fled, and that during their return trip defendant had discussed his acts with him and had admitted that he had first "operated" in Oakland after leaving Salt Lake City and should be returned to that place. Certain incriminating evidence concerning his activities was found in his possession. Defendant had admitted upon his preliminary examination that he had written the check and had passed it and received the money and that the name Robert E. Little was a fictitious person. Further recital of the evidence is unnecessary. Appellant presents four objections. He claims the trial court erred in the decisions of questions of law; that the information does not charge a public offense. He also claims the verdict is contrary to the evidence and that there is a variance between the pleadings and the proof. ■ On the day of the trial and just prior to the time of the impaneling of the jury the district attorney moved to amend the first count of the information. He claimed that the name B. F. Nelson Mfg. Co. had, through inadvertence, been placed in the instrument at a point where the name "Robert E. Little" should have appeared. The motion was granted and the words "such bank, corporation, copartnership Nelson Mf'g Co., a corporation" were stricken out and the information made to read, "whereas in truth and in fact there was then and there no such individual as Robert E. Little in existence" at the time the check was made, etc. It is argued that the information as amended charged an entirely different offense as far as the defendant is concerned. There is no merit in the claim. It is perfectly apparent that the name of the corporation had through inadvertence been recited in the information where the name "Robert E. Little" should have appeared. As pointed out by counsel for respondent the check was set out *in haec verba* in the information and the B. F. Nelson Co. was referred to as the corporation which appellant intended to defraud. The denial of the existence

of the corporation, later on, shows plainly that it was a mere clerical error. ■ Section 1008 of the Penal Code, which permits an amendment to be made to an information after the defendant has pleaded, is in accordance with section 4½ of article VI of the constitution and with the rule that mere technical errors in either pleading or procedure which do not in any way affect the substantial rights of the parties are not to be employed to defeat justice. (*People* v. *Clawson*, 82 Cal. App. 422 [255 Pac. 552].) The amendment in question did not affect the substantial rights of the defendant, and the court, therefore, did not abuse its discretion in permitting it. Moreover, the record discloses the fact that the attorney had knowledge, prior to the case being called for trial, of the intention to amend the information and had agreed thereto. ■ After the amendment and when the jury had been impaneled, defendant's attorney sought permission to file a demurrer. The motion was denied, the court using the following language: "Let the record show that after the impanelment of the jury that the demurrer was filed, and the court called attention to the fact the time had expired within which to file a demurrer, and the court does not grant leave to file the demurrer, but takes the position that there is no right to file a demurrer at this time. Furthermore, let the record show, even if the demurrer was permitted to be filed, and was filed, the court would overrule it." Section 1003 of the Penal Code provides that both the demurrer and plea must be put in, in open court, either at the time of the arraignment or at such other time as may be allowed to the defendant for that purpose. (See, also, sec. 990, Pen. Code.) A discussion of this question is unnecessary, as there is no merit therein. The court in effect overruled the demurrer and properly so. In this connection appellant urges his objection that the information, as amended, charged an entirely separate and distinct offense from that originally charged, and he should have been permitted to file his demurrer. As above stated, it is plainly apparent that the error was one of inadvertence, the correction of which did not in any manner prejudice the rights of the defendant. (*People* v. *Carroll*, 39 Cal. App. 654 [180 Pac. 49].) It is further urged that the record fails to show that appellant

either made the check in Alameda County or the state of California, or that he wrote the fictitious name Robert E. Little thereon. As above recited there was evidence that defendant admitted that he had written the check, passed it and received the money. ▮ In the absence of other proof evidence that a fictitious check was uttered in a certain county is strong proof that it was forged there, and is sufficient at least to entitle the state to go to the jury on that question, and to sustain a verdict that the crime was there committed (26 Cor. Jur. 975; *State* v. *Forbes,* 75 N. H. 306 [Ann. Cas. 1912A, 302, 73 Atl. 929]). ▮ Something is said in appellants' brief concerning the charging of the same offense under four different counts. The information clearly shows that the matter set forth thereunder was one and the same offense. ▮ A prosecution for forgery for making a fictitious check may be had under either sections 470 or 476 of the Penal Code. (*People* v. *Lucas,* 67 Cal. App. 452 [227 Pac. 709].) Moreover, the district attorney in his opening statement to the jury informed that body that it was a charge of one particular check. Then again, the judgments on the four counts run concurrently. It is therefore clearly manifest that appellant suffered no prejudice because of any conflict between sections 470 and 476 of the Penal Code. There is no merit in the appeal.

The judgment and order are affirmed.

Knight, J., and Cashin, J., concurred.