[Crim. No. 3708. In Bank.—December 27, 1934.]

THE PEOPLE, Respondent, v. WILLIAM L. DEYSHER, Appellant.

Edmund J. Thomas, Jr., Joseph K. Hawkins, Jesse H. Steinhart and John J. Goldberg for Appellant.

U. S. Webb, Attorney-General, and William F. Cleary and Seibert L. Sefton, Deputies Attorney-General, for Respondent.

THE COURT.—This cause was taken over by this court after decision in the District Court of Appeal, First Appellate District, Division One, solely because the appeal, so far as research has disclosed, presents for the first time a conviction under section 71 of the Penal Code, which section declares it to be a penal offense, punishable by fine or imprisonment in the state penitentiary, for a public officer to be "interested" in public contracts in a manner prohibited by law. Upon an examination of the entire record, and the authorities, we are satisfied with the appellate court's reasoning and conclusion that the appellant's conduct did violence to the provisions of the cited code section. We therefore adopt as the decision of this court the opinion of the District Court of Appeal prepared by Mr. Justice Gray *pro tem.* It reads:

"The grand jury of Marin county, by an indictment, containing 21 counts, each pleading a separate contract, accused appellant of as many crimes of being interested, while supervisor, in contracts for the improvement of county roads. Upon arraignment, appellant pleaded 'not guilty' to each count. Counts 11 and 14 were dismissed upon the prosecution's motion, during the trial. After a trial of ten days, the jury returned a verdict finding appellant guilty on counts 2, 5 and 15, based upon work ordered by him, and not guilty on three counts, based upon work ordered by

other supervisors, and disagreed as to the remaining counts, of which four were based upon contracts awarded by the board, after receipt of the bids and nine upon work ordered by other supervisors. His motion for a new trial having been denied, he was sentenced to imprisonment in the state prison at San Quentin, concurrently, on each of the three counts. He appeals from the order denying a new trial and from the judgment of conviction, urging as grounds for reversal, (1) erroneous admission of evidence, (2) insufficiency of the evidence to support the verdict, (3) erroneous refusal of two requested instructions, (4) variance as to count 5 and (5) misconduct of the prosecutor in closing argument.

"Section 71 of the Penal Code provides for the punishment of 'every officer . . . prohibited by the laws of this state from . . . *being interested in contracts* . . . who violates any of the provisions of such laws'. Section 920 of the Political Code declares that ' . . . county . . . officers must not *be interested in any contract* made by them in their official capacity, or by any body or board of which they are members . . . '. Section 4322 of the last code states that 'no member of the board of supervisors must *be interested, directly or indirectly* . . . *in any contract* made by the board or other person, on behalf of the county, for . . . the . . . improvement of roads . . . '. (Italics ours.) The evidence, without conflict, proves that appellant, as supervisor, on four different occasions, verbally ordered E. A. Forde, as president of Highway Builders, Ltd., a corporation, to improve three different roads, within his district; that, in doing such work, the corporation subsequently rented road equipment from a copartnership, of which appellant was one of two members; that appellant approved claims for such work totaling $2,124.40; and that the corporation paid the copartnership, as rent for equipment, a total of $1,219.50. The only element of the offenses charged in counts 2, 5 and 15, as to which there is any question as to proof, is appellant's interest in the road contracts. Such interest, if any, must have arisen by the renting of the equipment subsequent to the letting of the road contracts.

"Neither the briefs nor our own investigation has disclosed any case deciding what facts sufficiently establish

such an interest in a public contract as will subject an officer to punishment under said section 71 or similar statute. But aid can be obtained from civil cases considering the sufficiency of evidence to prove such an interest of an officer in a public contract as to invalidate it. Outside of a general discussion of the public policy, underlying the statutory prohibition, the cases of *Stockton P. & S. Co.* v. *Wheeler,* 68 Cal. App. 592 [229 Pac. 1020]; *County of Shasta* v. *Moody,* 90 Cal. App. 519 [265 Pac. 1032]; *Hobbs, Wall & Co.* v. *Moran,* 109 Cal. App. 316 [293 Pac. 145]; *Moody* v. *Shuffleton,* 203 Cal. 100 [262 Pac. 1095], cited by respondent, are not presently helpful, because, in each case, the prohibited interest existed at the award of contract. The purchase, after award of contract and *without previous agreement so to do,* by the contractor of material, used in the performance of the contract, from a member of the board awarding the contract, or from a corporation of which such member is a stockholder or employee, does not create, in such member, an interest in the contract, which will invalidate it. (*Escondido Lumber etc. Co.* v. *Baldwin,* 2 Cal. App. 606 [84 Pac. 284], cited with approval in *Worrell* v. *Jurden,* 36 Nev. 85 [132 Pac. 1158], and *Kerr* v. *State ex rel.,* 65 Ind. App. 102 [116 N. E. 590]; *O'Neill* v. *Town of Auburn,* 76 Wash. 207 [135 Pac. 1000, 50 L. R. A. (N. S.) 1140]; *People* v. *Southern Surety Co.,* 199 Mich. 30 [165 N. W. 769]; *Fredericks* v. *Borough of Wanaque,* 95 N. J. L. 165 [112 Atl. 309].) However, if the purchase is made pursuant to an agreement, made before the award of contract, the latter is void. (*City of Northport* v. *Northport Townsite Co.,* 27 Wash. 543 [68 Pac. 204].) In the last case it is said: 'However devious and winding the chain may be which connects the officer with the forbidden contract, if it can be followed and the connection made, the contract is void.' 'In determining whether or not a contract such as this is against public policy and illegal, the court is not concerned with the technical relationships of the parties, but will look beyond the veil which enshrouds the matter to discern the vital facts.' (*Tuscon* v. *Smith,* 130 Me. 36 [153 Atl. 289, 73 A. L. R. 1344].) The making of an agreement may be inferred by proof of conduct as well as by proof of the use of words. (*Dunham, Carrigan & Hayden Co.* v. *Thermoid Rubber Co.,* 84 Cal. App. 669 [258 Pac.

663]; *Northern Assur. Co.* v. *Stout,* 16 Cal. App. 548 [117 Pac. 617]; Civ. Code, sec. 1621.)

''The conduct of appellant and the corporation in the rental of the equipment, together with attendant circumstances is shown by the following undisputed facts: Appellant was a supervisor of Marin county for a term of four years, commencing January, 1929. Prior thereto and while such supervisor, he was an equal partner in a copartnership which was engaged in owning, operating and renting road machinery, especially trucks, and conducting a garage. His stepson, at all times covered by the indictment, was general manager and bookkeeper of the copartnership's business and, particularly, was in charge of rentals of equipment. In July, 1929, E. A. Forde incorporated the Highway Builders Ltd. for the purpose of continuing his business of road construction and exploiting an agency for the sale of road asphalt. He, at all times, was the president and sole owner of the corporation, transacted all its business and received all its profits. At its inception, he transferred to the corporation, a scarifier, small tools and other undisclosed assets, valued at $1,767.49. He bought, for the corporation, from the copartnership, in 1929, a 17,000-gallon tank and pumping equipment for $600; in 1931, a truck, a crusher distributor, a roller and a tank truck; and in 1932, another truck. The corporation never owned any other equipment. In November, 1929, he hired appellant's stepson as bookkeeper for the corporation and the latter continued as bookkeeper at all times. Thereupon, the office of the corporation was moved from Forde's home to the address of the copartnership, in a building owned by it.

''Each supervisor solely ordered all road work within his road district, accepted its performance and approved the claim therefor, and upon such approval, the board of supervisors ordered its payment. Appellant verbally ordered Forde to do the work, specified in the counts upon which he was convicted, at an agreed price fixed at cost plus 15 per cent. In the performance of this work, equipment of the copartnership was used, with appellant's knowledge. Of the other remaining sixteen contracts, four were awarded by the board, appellant voting therefor, after receipt of competitive bids, and the remainder resulted from verbal orders of other supervisors. The county paid the

corporation a total of $36,416.70 for these nineteen jobs and the corporation paid the copartnership a total of $13,-402.37 for rent of equipment used thereon. During 1930, 1931 and the first month of 1932, the corporation did about $85,000 worth of work for the county. Equipment of the copartnership was used in all of this work, exclusively, except, on four jobs, where additional equipment of a kind not possessed by the copartnership was rented from other parties. The corporation also rented trucks from the copartnership for use in the performance of public contracts in four neighboring counties. Twelve or thirteen years before, appellant, while a town trustee, had been advised by a deputy attorney-general that it was unlawful for a public official to be interested in a public contract, but that it was lawful to rent equipment to the contractor after the contract was let. Appellant saw the copartnership's equipment used by the corporation in performance of county contracts. The stepson rented the equipment to the corporation and fixed its rental price. Appellant ordered the work, described in count 15, after the corporation had rented equipment from the copartnership which it had used in performance of the contracts specified in the next six counts; the work, described in count 5 after such rental for use in the performance of contracts, specified in the last sixteen counts; and the work described in count 2 after such rental for use in doing the work specified in counts 3 to 21, both inclusive.

"Appellant assigns as error the admission over his objection of evidence, relating to work, wrongly described in count 14, which had previously been dismissed for variance, and to work, not covered by the indictment, but done during the times specified therein. The first job was ordered by appellant at a cost to the county of $2,550 and the corporation paid to the copartnership as rental for its equipment used thereon the sum of $1,306.26. The second job consisted of the oil surfacing of a continuous portion of the San Quentin-Greenbrae-Kentfield road, within appellant's district. To evade section 2640 of the Political Code, requiring bids for work in excess of $2,000, appellant gave to the corporation, at a unit cost in excess of the prevailing price, five contracts for this work, each for less than $2,000, but all totaling $7,810.93. ▇ Evidence showing the com-

mission of independent crimes which has no tendency to prove any material fact connected with the particular crime charged is inadmissible. (8 Cal. Jur. 58.) Evidence of other crimes, which are of the same general character, are connected as part of one plan or scheme and tend to the same common end is admissible to show motive and design leading up to the particular crime charged and thus directly tending to show that the crime in question was part of such common scheme. (8 Cal. Jur. 69.) The prosecution was attempting to prove such conduct between appellant and the corporation as would warrant the inference that an agreement as to the rental of equipment was made before the work was ordered. Obviously, the questioned evidence as to their conduct relative to other work during the same time was material on that issue. The court, of its own volition, correctly, at the time of its admission, admonished the jury as to the limited consideration which could be given such evidence.

■ " 'The findings of a jury upon disputable questions of fact if supported by direct evidence or inferences or both must be given full faith and credit. It is only where, as a matter of law, there is no legal evidence supporting the charge that a reviewing court may disturb a verdict. The rule, upon an appeal in a criminal case, is that the court must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence and then determine whether or not the guilt of the defendant is deducible therefrom. The question for the court to pass upon is whether there were facts before the jury to justify the inference of guilt. (*People* v. *Tom Woo*, 181 Cal. 315 [184 Pac. 389].)' (*People* v. *Hennessey*, 201 Cal. 568, 571 [258 Pac. 49].) ■ From the sale by the copartnership to the corporation of practically all of the latter's road equipment and the common use of the same office and bookkeeper the jury might have reasonably deduced a close business connection between them. From the almost exclusive use of partnership equipment by the corporation in the performance of its contracts and the payment of rentals in a large amount therefor the jury might well have inferred that the corporation was a favored and valuable customer of the copartnership, whose profits would be increased by reciprocity. The jury might also have believed

that appellant was attempting to evade the statutory prohibition, of which he had previously been advised, when he did not himself rent the equipment, but allowed the common bookkeeper, who was his manager and agent, to do so, with his knowledge. The jury also could have reasonably inferred from previous rentals of equipment on other county contracts that appellant had reason to believe, before he ordered the corporation to do any work, that it would, in continuance of its previous practice, rent copartnership equipment in doing such work. The jury was not required to acquit appellant because he denied making an express contract of rental, but it was warranted by the evidence as to his conduct towards the corporation, in inferring an implied contract for such rental, made before his ordering of the work.

██ "The court correctly refused to give two of appellant's proposed instructions, which advised the jury to acquit if they believed the evidence established specified facts. The pertinent part of the first instructed an acquittal if the jury believed the contracts referred to in the indictment were entered into between the board of supervisors and the corporation contractor 'without any previous *arrangement* between the defendant and the said corporation contractor contemplating the rental or use by said corporation contractor of trucks and equipment from the firm of which the defendant was a member.' (Italics ours.) ██ As above pointed out, if an agreement, either express or implied, had been made by appellant and the corporation for the rental of the equipment before the former ordered the road work, he was interested in such work. The word 'arrangement' is a very wide and indefinite term, which has a different signification from the word 'agreement' and does not necessarily mean an 'agreement'. (5 Cor. Jur. 373.) Its use, therefore, made the instruction vague, meaningless and misleading, as applied to the facts. ██ The second, so far as here material, advised a verdict of not guilty if the jury believed that, in the public contracts, 'the defendant was not interested except to the extent that he might have been indirectly interested by reason of said corporation contractor having subsequently hired or used trucks or equipment in the performance of any work or improvement specified in said contracts from the firm of which defendant was

a member'. If such rental resulted from an agreement previous to the public contract, it would create a prohibited interest. The instruction, by the omission of the element of previous agreement, erroneously stated that such rental could never create an interest. The court, in its own instructions, correctly and fully defined 'interest' and when prohibited.''

At this point, we add to the discussion of the District Court of Appeal the following: These instructions purport to relate to the contracts let by the board of supervisors. Appellant was acquitted on the charges relating to these contracts. He was convicted for those offenses only in the commission of which he was charged with having personally let the contracts for public work as road commissioner. He personally approved the resulting and subsequently presented claims against the county. It therefore appears that the jury gave appellant the benefit of every possible doubt, and convicted him of only those offenses wherein his interest was manifest, and wherein his knowledge of, and intentions as to, that interest were as fully apparent. Therefore, aside from the discussion by the District Court of Appeal on the refusal of the trial court to give the two instructions, we are of the view that no prejudicial error was committed by such refusal.

''The 5th count of the indictment alleged that during December, 1931, the copartnership rented to the corporation its trucks and equipment, which were used by the corporation upon work, which was being performed by the corporation on the Nicasio road in Road District Number 5 and for which the copartnership was paid by the corporation the sum of $112. The only identification of the public contract involved, is this designation of its location. The evidence proved the time of use and amount of rental of the equipment as alleged, but the location of the work as at White's Hill in Road District Number 2. The variance occurs not in surplusage as to venue but in the description of the public contract. An allegation otherwise not essential may become material and must be·proved in all cases when descriptive of that which is necessary to the charge. (*People* v. *Handley,* 100 Cal. 370 [34 Pac. 853]; *People* v. *Strassman,* 112 Cal. 683 [45 Pac. 3]; *People* v. *Lapique,* 10 Cal. App. 669 [103 Pac. 164].) Since an acquittal on this count would not have barred a further prosecution on the

contract disclosed by the evidence, the variance is fatal. (*People* v. *Arras*, 89 Cal. 223 [26 Pac. 766].)

 ''Counsel for the People in his closing argument forcefully resented what he designated as an insinuation that the local judge, who did not try the case, had participated in the interview of a prosecution witness. While the defense's cross-examination of this witness did not show such participation, the questions asked can be reasonably construed as carrying such insinuation. The redirect examination conclusively negatived such participation. The argument was justified, even if the defense immediately disavowed any such insinuation and as strenuously resented the same.''

The judgment and order denying a new trial are, and each is, affirmed as to counts 2 and 15. The judgment is reversed, for variance, as to count 5.

Rehearing denied.