[Crim. No. 4787. Second Dist., Div. Two. Jan. 30, 1953.]

THE PEOPLE, Respondent, v. PATRICIA ANN ROYALE et al., Appellants.

Patricia Ann Royale and Henry Bellows, in pro. per., for Appellants.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

FOX, J.—The defendants were convicted on three counts of grand theft. Following the denial of their respective motions for a new trial, proceedings were suspended and defendants

were granted probation. They appeal from the orders denying their motions for a new trial.

The complaining witness, Mrs. Marie Blackwell, had known Miss Royale since 1942 when they were neighbors, and had met defendant Bellows in 1945, when her husband was living. In May, 1949, defendant Royale called twice on Mrs. Blackwell telling her that she had married Mr. Bellows who was a millionaire, and that they lived on a very lovely boat in Newport Bay. On the second visit Miss Royale told Mrs. Blackwell that Mr. Bellows had sent $5,000 to her (Mrs. Blackwell) in case she needed it because of Mr. Blackwell's recent death. Mrs. Blackwell said she did not need it. Miss Royale then invited Mrs. Blackwell to visit them on the boat, which she did a short time later. While on the boat defendant Royale stated that whatever Bellows touched turned to gold. He then told her "about the ten millionaires" who "had come to the table and each put in a million dollars . . . put it in investments." Defendants named the ten millionaires who made up the group; they included Harold Lloyd, Mary Pickford, Howard Hughes, the Goulds, the Vanderbilts, the DuPonts, and M.G.M.; they would come together once a week to make investments. Bellows mentioned an island they were going to buy with war surplus on it which the United States government had left there; they would make a hugh profit in selling the goods. He also said they planned to purchase buildings that were unfinished because of lack of finances and complete them and sell them at a big profit. They would, of course, invest in a variety of other things.

Bellows told Mrs. Blackwell that he was a Russian nobleman; had a lot of money; had invested several million dollars in England and Palestine; and was a trouble-shooter at M.G.M., getting $150,000 a year. He also explained that he had invented a cure for cancer (which had been the cause of Mr. Blackwell's death) and that she would play a definite part in its development.

Defendants offered to cut her in on the pool. They urged that she liquidate all she could—even suggesting that she sell her home and put it into this venture. They also stated that they would make up any loss she might sustain. On June 12, 1949, Mrs. Blackwell gave Miss Royale her check for $5,000 to put into this investment pool. It was deposited in Miss Royale's bank account.

The next day defendants came to Mrs. Blackwell's home in Los Angeles. Bellows took the women, including Mrs.

Blackwell's daughter and her friend, to lunch at a Hollywood hotel. After lunch Miss Royale accompanied Mrs. Blackwell on a shopping tour in Hollywood buying her three dresses and a pair of shoes. Miss Royale explained that her husband, Mr. Bellows, gave her some money to spend and these purchases were going to be a belated Mother's Day present for her. Bellows took the group to dinner. When Mrs. Blackwell thanked him for the presents he replied, "Oh, that is nothing. Your money made over a thousand dollars overnight."

While at the Blackwell home on that occasion Miss Royale gave Mrs. Blackwell a promissory note, signed by her, for $5,000. She explained that the purpose for giving this note was that in case anything should happen to her Mrs. Blackwell could collect from her estate.

Some two weeks later defendants told Mrs. Blackwell that the millionaires "were coming to the table again," and that she should put in all the money she possibly could. On that occasion she gave Miss Royale another check for $2,000. A few days later Miss Royale asked the complaining witness to put $5,000 more into the pool. Miss Royale explained to her that the pool was "making good money." Mrs. Blackwell gave her a check for $3,500. Soon thereafter Miss Royale asked her for an additional $1,500, saying that the "millionaires were coming together." Mrs. Blackwell gave her a check in that amount. All of these checks were deposited in Miss Royale's bank account.

As in the first instance, promissory notes were given by Miss Royale to Mrs. Blackwell covering these later transactions. The complaining witness testified that she believed the representations that were made to her by the defendants; that she had confidence in them, and advanced these various amounts in reliance upon their statements and representations. She further testified that these transactions were not loans.

The testimony discloses that funds had been procured by the defendants from a number of other people by means of similar representations. It further appears that the demands of some of these people were paid from the funds realized from Mrs. Blackwell. A representative of Metro-Goldwyn-Mayer's studios testified that they had a contract with defendant Bellows in October, 1945, for the finished treatment of one of their scenarios for a total consideration of $4,500, and that defendant Bellows had no other contract or employment with their studios. A representative of the Mary Pickford Enterprises, and the general manager of the Harold

Lloyd Corporation testified that their organizations were not acquainted with defendant Bellows and had not advanced any money for any investment pools. A search by the assessor's office of Orange County revealed that there was no property assessed in the names of the defendants, and that the boat on which they were living was assessed to a third party.

The defendants argue that the evidence is insufficient to sustain the judgment of conviction. This contention is not well founded. ■ Before a judgment of conviction may be reversed on the ground of the insufficiency of the evidence it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) ■ An appellate court must assume, in support of the judgment, the existence of every fact which the trial court could have reasonably deduced from the evidence, and then determine whether the facts "justify the inference of guilt." (*People* v. *Deysher,* 2 Cal.2d 141, 149 [40 P.2d 259].) ■ If the circumstances reasonably justify the determination of the trier of the facts, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendants will not warrant a reversal. (*People* v. *Newland, supra; People* v. *Gould,* 111 Cal.App.2d 1 [243 P.2d 809].)

■ From the recited evidence the trial court could reasonably conclude that the defendants' story about the meetings of a group of millionaires for the purpose of establishing an investment pool was untrue; that defendant Bellows was not a member of any such group; that no investment pool was ever established; that the existence of such a group of financially successful people and the establishment of such an investment pool were material considerations in causing Mrs. Blackwell to part with her $12,000. The intent to defraud may be inferred from the fact that similar fraudulent representations were made to other people; that no investment pool was ever established; that a portion of Mrs. Blackwell's funds was used to pay the demands of others who had been fraudulently drawn into defendants' operations and the balance used for their ordinary living expenses; and from the conduct and false statements of the defendants. That an actual fraud was committed is established by the fact that although Mrs. Blackwell demanded the return of her money she only received $100. She testified that she had confidence in the defendants and relied on their statements. This supports

the implied finding that she parted with her money in reliance upon the false representations of the defendants. Thus all the elements of grand theft based on the theory of obtaining money by false pretenses are established. (*People* v. *Frankfort,* 114 Cal.App.2d 680, 696 [251 P.2d 401].)

██ Defendants contend that the court erred in refusing to allow a substitution of attorneys for the purpose of making a motion for a new trial. There is no merit in this point. At the time set for the hearing on the motion for a new trial one of the trial attorneys for the defendants advised the court that the defendants no longer had confidence in him and his associate and that defendants requested that counsel make a motion that they be substituted out of the case. No other counsel had been employed, and no arrangements appear to have been made for such employment. There was no transcript of the evidence. After explaining to the defendants that they had been well represented and that another attorney could not well argue a motion for a new trial in the absence of a transcript of the record, the trial court continued the matter until the middle of that afternoon. Upon the resumption of the hearing the court was advised by counsel that ''Mr. Bellows has no objection to me arguing the motion for a new trial, and Miss Royale neither; and I am prepared to do it.'' This indicates that the defendants were agreeable to having their motion for a new trial presented and argued by the attorneys who had tried the case. The trial court thereupon directed counsel to proceed. It is clear that there was no abuse of discretion in this matter.

The orders denying the respective motions of the defendants for new trial are affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied February 13, 1953, and appellants' petition for a hearing by the Supreme Court was denied February 26, 1953.