[Crim. No. 872.   Fourth Dist.   Sept. 22, 1953.]

THE PEOPLE, Respondent, v. MELVIN JOSEPH CON-
ERLY et al., Defendants; WILLIE D. ELLISON,
Appellant.

Arthur J. May for Appellant.

Edmund G. Brown, Attorney General, and Michael J.
Clemens, Deputy Attorney General, for Respondent.

GRIFFIN, Acting P. J.—Appellant Willie D. Ellison, to-
gether with his codefendants, Melvin Joseph Conerly and
Herman Carter, were jointly charged and convicted by a jury

of the crime of second degree burglary, in that on December 30, 1952, they entered McCourt's Clothing Store in Tulare with the intent to commit theft. Appellant alone appealed from the judgment of conviction, and his sole argument is that the evidence is insufficient to support the judgment.

The record shows that about 1 p. m. on December 29th, Ellison and Conerly entered the store. Conerly inquired of the only saleslady, Mrs. Braden, the manager's wife, about a suede coat. While showing the coats to him, appellant strolled to the back of the store near the rear door entrance. The defendants were in the store about 10 minutes and left without making a purchase. About 4 p. m. appellant went to a rooming house nearby and told the caretaker he had a wife and her lady friend who wanted a room. About an hour later Conerly and appellant returned with two women, not their wives, and signed the register. Carter stayed in appellant's Cadillac car. About 9 p. m. the proprietor of the rooming house saw the men leave and later return, but never saw them after that time until he identified them at the trial. He did notice, at 7 o'clock the next morning, that they had gone. There was testimony that about 9 o'clock on December 29th Conerly and Carter went into a pool hall together and about half an hour later appellant joined them, and that about 11 p. m. the three left in the Cadillac automobile. About 8:45 a. m. on December 30th, the Bradens discovered the rear door to the store was propped open, the door knobs were bent, and the rear window had been pried or jimmied, but the bars on the inside precluded entrance through this window. There were mud tracks leading to where the suede coats and clothing were located. Many trousers, overcoats, and suede coats, valued at $2,400, were missing, as well as $63 in cash taken from the till. A crowbar was found near the rear entrance to the store. Braden identified two men's suede coats in evidence as being similar to those carried by that store. A topcoat, carrying the "Randolph" label, was identified by the Bradens. This store was the only store in Tulare carrying clothes of this label. Tags from the suede coats on which Mrs. Braden had written certain figures, were found in appellant's room. The three defendants were arrested in Barstow and at first each denied having any knowledge of the burglary at McCourt's store. Later Ellison admitted he was in Tulare with Conerly but stated that he had picked up a third man, a hitch-hiker, on the road to Tulare. Ellison denied owning or knowing anything about the "Randolph" topcoat found

in the front seat of his Cadillac car, although he had been driving the car. He denied being with any women in Tulare on December 29th.

Conerly admitted being with appellant and Carter with two women in Tulare that night. He claimed he won the topcoat gambling in Los Angeles. When arrested he was wearing a suede coat similar to the one stolen from the McCourt's store. Carter admitted being with the two other defendants and the two women in Tulare. The topcoat and suede jacket were found in Carter's home. He first claimed he bought these in Los Angeles. Later, appellant Ellison admitted they were with two women in Tulare when informed by the officer that Conerly had admitted that fact. En route to Tulare, Carter, when in the absence of the other two defendants, admitted in detail the part he played in the burglary, and stated that the other two defendants rented the room with the two women; that about 10 o'clock Ellison and Conerly told him to stand watch while they entered the store; that after a short time they returned in the Cadillac and he jumped in and found the back seat filled with coats and clothes; that they drove back to the rooming house, picked up the girls and left; that when he arrived in front of his home he was given a jacket and topcoat and was told by Ellison and Conerly that they would take care of him with some more clothing at a later time.

At the jail, Carter signed a written statement which was received in evidence against him only. After making the statement Carter went with the officers and pointed out to them where he stood while appellant and the other defendant burglarized the McCourt's store. Conerly stated that if the officers would take Ellison with him they might recover some of the stolen property because Ellison knew more about it. In Barstow Ellison was asked how to proceed to recover the stolen articles, and he replied that he had better get one of the women who was with him in Tulare, naming her, and said she might know where the articles were. They drove to her home. She was amazed to see Ellison and asked what he was doing there. Appellant replied: ''We came down to try to recover some of the property that we took in Tulare.'' Appellant gave her a list containing certain names of persons who were supposed to have received the articles stolen in Tulare. The woman later returned the list to the officers in the presence of Ellison and said she could not recover any of them. Ellison refused to make any further statements.

Conerly later admitted the part he played in the burglary and identified the crowbar found in the store as the instrument used to pry open the back door.

At the trial appellant Ellison admitted being in Tulare that night. He said he went to sleep in the afternoon of the 29th and remained in the room until 1 a. m. the next morning when they left for Barstow. He admitted going into the store with Conerly that afternoon to inquire about the suede coat. He stated he had been feeding Conerly because Conerly had no money. He admitted conviction of three prior felonies. Conerly, after admitting a prior conviction of felony (burglary) testified that he alone committed the crime, and that Ellison and Carter had nothing to do with it. Carter failed to testify.

The corpus delicti was concededly proved by direct as well as by circumstantial evidence. The appellant's connection therewith, his felonious intent to commit the theft, and his guilty participation in the burglary was established by circumstantial evidence, when considered in connection with his flight from the scene in his car shortly after the commission of the crime, and the admissions and contradictory statements made by him. The evidence fully supports the jury's conclusion that he at least aided and abetted his codefendants in the commission of the offense. (*People* v. *Etie,* 119 Cal. App.2d 23 [258 P.2d 1069]; *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778]; *People* v. *Royale,* 115 Cal.App.2d 678 [252 P.2d 748]; *People* v. *Deysher,* 2 Cal.2d 141 [40 P.2d 259].)

Judgment affirmed.

Mussell, J., concurred.