[Crim. No. 7264.   Second Dist., Div. Two.   Sept. 14, 1960.]

THE PEOPLE, Respondent, v. KENNETH LEE SMITH et al., Defendants; RICK NEIL ENDLEY, Appellant.

Thomas J. Gately for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

FOX, P. J.—In an information filed by the district attorney defendants Smith, Miller, Decker and Endley were each charged with the possession of marijuana, in violation of section 11530 of the Health and Safety Code. Endley was also charged with a prior conviction, namely, violation of section 11500 of the Health and Safety Code. He pleaded not guilty and admitted the prior conviction. The other defendants also pleaded not guilty. Miller, however, withdrew his plea of not guilty and entered a plea of guilty. The jury found Endley and his codefendants guilty. Endley's motion for a new trial was denied and he was committed to the Youth Authority for the term prescribed by law, his sentence to run concurrently with that imposed by reason of his prior conviction. Endley has appealed from the judgment and the order denying him a new trial.

On the evening of December 12, 1959, Officers Hitchings and McMahan, of the Long Beach Police Department, received a radio dispatch relative to a loud party at Fourth and Maine Streets. The officers drove to the location in an unmarked police car, observed several persons in a house through an open door, and also saw a Chevrolet parked in front of the house which was occupied by four young men. The officers circled the block and approached the location from a different angle and observed the Chevrolet leaving with its four occupants. It proceeded east on Fourth Street at a high rate of speed. It was being driven in an erratic fashion; it would weave from the center of the street to the south curb. The car proceeded to the Long Beach Freeway where it went north. It was still traveling at a very high rate of speed and in such an erratic manner that it narrowly missed the cement dividing strip which separates the north and southbound traffic on the freeway. Shortly thereafter the vehicle left the freeway. It failed to make a boulevard stop. The officers then threw their spotlight on it. The car was soon stopped at a red traffic signal. The officers emerged from their car and approached the occupants of the Chevrolet. Officer

Hitchings recognized Smith as the passenger in the right front seat and Decker as the passenger in the left rear seat. He also recognized appellant. The car belonged to Decker but was being driven by appellant who permitted it to travel several feet into the intersection against the red signal. Miller was in the right rear seat. Officer Hitchings observed a hand protrude from the right rear window of the Chevrolet and drop a small object to the ground. He immediately retrieved this object which turned out to be a hand-fashioned marijuana cigarette. The officers ordered Smith and Miller to get out of the car. Upon doing so, each of them ran from the scene, but were later captured, Smith having been wounded in his attempt to escape. Officer McMahan went to the driver's door, found it locked, and shouted to the driver, "Open the door; police officers." Appellant opened the door and demanded to see some identification. At this point the officer produced his badge and ordered appellant to get out of the car. The officers searched the Chevrolet and found numerous seeds and debris of marijuana. They also found a quantity of green material in Miller's pocket. At this time Officer Hitchings observed a quantity of green material between the teeth of appellant. The officer asked him what he had in his mouth, and he answered, "Gum." This material had a very definite green color and was "leafy in appearance." The officers, however, did not find any marijuana in appellant's clothing. A later examination at the jail revealed that appellant still had green, leafy material in his mouth and between his teeth. The officers also noticed small particles of green on appellant's tongue. None of this green, leafy material was removed from appellant's mouth and analyzed. Marijuana is green if it is fresh. The officers then made certain tests on appellant as to his eyes. These tests showed that while his eyes reacted in a fairly normal manner, it was the officer's opinion that they did not contract as rapidly as a normal person's eyes would.

In a conversation at the police station with the officers, appellant stated that he knew the officers had been following his car for some time because he recognized their vehicle. He also stated, "I was thinking about taking off." In response to the officer's inquiry as to why he was thinking of that he replied, "I didn't want to get rousted again." When appellant was asked who threw the "joint" out of the rear window, appellant replied, "If anybody threw a joint out, they're nuts, they should have eaten it." It was the officer's belief

that appellant had swallowed the contraband. He told the officer that he was on probation. This was because of a previous charge of possession of narcotics, to which he pleaded guilty. When asked why he still played around, appellant replied, "I wouldn't play around if I got hard time."

Appellant denied possession of marijuana and stated he had no idea that Miller had a marijuana cigarette in his possession; he denied seeing Miller throw a cigarette out of the window or that there was any conversation about such an incident. He was driving Decker's car because the latter was sick. He explained to the officer that he took off in a hurry from the party where the police first observed the group because there had been some trouble there. He said he had never known Decker to use marijuana. He further testified that Decker gave him some Clorets, a gum that is green in color, the purpose of which was to enable him to get rid of the odor of beer which he had consumed. He made the statement relative to a person being crazy who would throw a cigarette out of a car instead of eating it, because of something he had seen on a TV program or a narcotic picture. He testified that he had started to run the red light when the police apprehended the group because he did not know the men approaching their car were police officers.

In seeking a reversal appellant's sole contention is that the evidence is insufficient to support the judgment.

It must be borne in mind, in passing on the sufficiency of the evidence to sustain a conviction, that before a judgment of reversal may be had it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

Also, we must assume in support of the judgment the existence of every fact which the trier of fact could have reasonably deduced from the evidence, and then determine whether the facts "justify the inference of guilt." (*People* v. *Deysher,* 2 Cal.2d 141, 149 [40 P.2d 259].)

Applying these principles, it cannot be said, as a matter of law, that the evidence is insufficient to support the conviction of appellant. It is unmistakably clear that there was marijuana in the Chevrolet. This is demonstrated by the fact that Miller threw a marijuana cigarette out of the window; that marijuana was found in his pocket and that marijuana debris and seeds were found in the car. The jury could reasonably believe that the green leafy material be-

tween appellant's teeth, in his mouth, and on his tongue was marijuana and the fact that it was "leafy in appearance" would justify the jury in concluding that it was not the hard covering of a piece of gum. The jury could reasonably draw the inference that appellant had been in possession of marijuana which he had swallowed. Such inference is fortified by appellant's statement that if anyone threw a marijuana cigarette from the car he was "nuts," that he should have eaten it. Also, appellant started to flee in the car when he discovered that he was being followed by the officers. ■■ Flight is a factor tending to connect an accused with commission of an offense. (*People* v. *Hoyt,* 20 Cal.2d 306, 313 [125 P.2d 29]; *People* v. *Spivak,* 166 Cal.App.2d 796, 811 [334 P.2d 44].) ■■ When asked on the stand to explain his actions appellant stated that he did not know the two men were police officers, although he had stated soon after the group was apprehended that he knew his car was being followed by officers. The jury could have concluded that the explanation appellant gave on the stand was false. ■■ When a defendant gives an explanation that is false and a fabrication such evidence tends to show a consciousness of guilt and strengthens the inference of guilt arising from other facts. (*People* v. *Peete,* 54 Cal.App. 333, 352, 353 [202 P. 51]; *People* v. *Cole,* 141 Cal. 88, 90 [74 P. 547]; *People* v. *Stanley,* 162 Cal.App.2d 416, 420 [327 P.2d 973].) ■■ Also, one of the officers noted that appellant's eyes did not contract as rapidly as a normal person's eyes should. This would tend to indicate recent use of a narcotic.

The facts and circumstances herein referred to amply "justify the inference of guilt" that the jury drew and which the trial judge approved by denying appellant's motion for a new trial.

The judgment and order are affirmed.

Ashburn, J., concurred.

A petition for a rehearing was denied October 4, 1960.