[Crim. No. 7433. Second Dist., Div. Four. Nov. 14, 1961.]

THE PEOPLE, Respondent, v. EUGENE VENCIL HAWKINS, Appellant.

Frank Duncan for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Herbert Davis, Deputy Attorney General, for Respondent.

BURKE, P. J.—A jury returned a verdict of guilty against defendant on two counts: in Count I for issuing a fictitious check in violation of Penal Code section 476; in Count II for the crime of forgery of a fictitious name in violation of Penal Code section 470. Defendant was sentenced to prison for the term prescribed by law on both counts, the sentences to run concurrently. Probation was denied. Defendant's motion for a new trial was also denied. Defendant appeals from the judgment of conviction and the order denying the motion for a new trial.

On Saturday evening, June 25, 1959, defendant picked up a suit of clothes made for him by John R. Mendoza with whom he had done business previously. He left a second suit for alterations. Defendant paid for the suit with a check for $218, in which the names of the drawer, payee and bank were written in by hand. The bill for the suit was $130, and Mendoza advised defendant that he did not have change for the remainder. Defendant told Mendoza he intended to order another suit and for him to apply the balance of the check on the new order.

The face of the check which defendant gave Mendoza was already made out in pen and ink. The check was signed with the name Carol McDonald and with her address shown as 316 Oakhurst, Beverly Hills. Defendant was the payee on the check. There was some discrepancy in the date of the

check, and in the presence of Mendoza defendant wrote the numeral "5" on the check, making the date of it read July 25, 1959. Defendant in the presence of Mendoza endorsed the back of the check by signing his signature and placing an address and telephone number thereon.

After defendant left the store Mendoza noticed the check was drawn on the Bank of America located at Seventh and Hill in Los Angeles. He knew that this bank did not have any branch on that corner. Mendoza subsequently ascertained that although there was no such address as "316 Oakhurst," there was both a 316 North and a 316 South Oakhurst. He discovered that there was no "Carol McDonald" living at either of those addresses.

The following Monday Mendoza called the telephone number given by defendant on his endorsement of the check and talked with defendant's mother, leaving word for defendant to call him. Approximately three hours later defendant did call him, and Mendoza informed him that the check was no good. Defendant told him he would see him right away so that he could give him something on account and that he was sorry but he had thought the check was good. On the following day, Tuesday, defendant came to Mendoza's place of business and gave him $20 on account. About a week later he picked up the suit which he had left for alterations and paid Mendoza another $20.

Mendoza did not see defendant again until he accidentally met him about a month later at which time defendant told him he was down on his luck. He did not give Mendoza any money thereafter, nor did Mendoza hear from him excepting that in September 1959 defendant brought in a friend who wanted some alterations done.

When questioned after being arrested, defendant did not answer the question as to who had written the check. When asked who Carol McDonald was defendant stated that that would come out at the trial and that he had nothing further to say.

Defendant testified that he received the check on July 25, 1959, from a Miss Flo Herman as a repayment of a loan of $175. He said that he had given her $43 in cash to make up the difference between what she owed him and the amount of the check. Defendant asserted that when he gave the check to Mendoza he did not know that it was not good; that after being told by Mendoza that the check was not good he called Flo Herman and asked who Carol McDonald was and was

told that it was someone she had bailed out of jail; that this person had forfeited her bail and that she, Flo Herman, had received the check as payment for money owed her; that she had requested Carol McDonald to make the check out in defendant's name because defendant had informed her he needed to be paid right away so he could pay for his suit.

Donn E. Mire, an examiner of questioned documents and handwriting expert employed for six years by the District Attorney of Los Angeles County, testified for defendant that in his opinion defendant did not write the pen and ink writing on the face of the check given to Mendoza.

 Defendant contends that prejudicial error occurred when the court admitted testimony over his objection concerning his source of income for a period of three to four years prior to his arrest. This testimony revealed that defendant had operated a bookie shop and that he did not have a federal bookmaker's stamp. When asked concerning further details of his bookmaking operations, defendant invoked the Fifth Amendment. Defendant contends that evidence of unrelated misconduct is uniformly condemned as tending to draw the minds of the jurors from the real point on which their verdict is sought and to excite prejudice and to mislead them. (*People* v. *Glass,* 158 Cal. 650, 658 [112 P. 281].)

The People maintain that the inquiry into defendant's source of income was relevant and proper both to clarify an inconsistency in defendant's testimony and to establish that he had a motive for committing forgery. In this connection, defendant testified that he had worked on a part-time basis for Flo Herman for about three months ending in June 1959 but that he did not receive any set salary from this job. He said he had had a previous job about three years before June of 1959. He first stated that he had no other source of income, but subsequently said that he did have income, or at least money, from different interests. He was asked how he obtained this source of income and his objection to this question was overruled. It was at this point that he stated that he had operated a bookie establishment.

 In a criminal case it is proper and persuasive, although not essential, to present the fact of motive for the crime. (*People* v. *Rosborough,* 178 Cal.App.2d 156, 163 [2 Cal.Rptr. 669].) In a prosecution for forgery the need or lack of money is always ample motive for passing a fictitious check. Thus, the People correctly contend defendant's financial condition prior to the passing of the check is

pertinent, material and relevant, and where relevant and material will not be excluded merely because it may be prejudicial to the accused. (*People* v. *Wooten,* 162 Cal.App.2d 804, 816 [328 P.2d 1040]; *People* v. *Edwards,* 159 Cal.App.2d 208, 212 [323 P.2d 484].)

 Defendant also contends that the evidence was insufficient to justify the verdict. It should be borne in mind, in passing on the sufficiency of the evidence to sustain a conviction, that before a reversal may be had it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) We must assume, in support of the verdict, the existence of every fact which the jury could have reasonably deduced from the evidence and then determine whether or not the guilt of the defendant is deducible therefrom. The question for the court to pass upon is whether there were facts before the jury to "justify the inference of guilt." (*People* v. *Deysher,* 2 Cal.2d 141, 149 [40 P.2d 259].) If the circumstances reasonably justify the determination of the trier of fact, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of defendant will not warrant interference with the determination of the jury. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

"The crime of forgery consists either in the false making or alteration of a document without authority or the uttering (making use) of such a document with the intent to defraud." (Pen. Code, § 470; *People* v. *McKenna,* 11 Cal.2d 327, 332 [79 P.2d 1065].) In *People* v. *Morgan,* 140 Cal.App.2d 796, 800 [296 P.2d 75], the court stated that forgery "is committed when one makes or passes a false instrument with intent to defraud." That the check in question was not genuine was established by the testimony of Mendoza concerning the investigation that he had made of the purported maker together with the testimony of a bank representative to the effect that the particular branch on which the check was drawn was in fact nonexistent. The investigation also showed that the purported maker did not have any account with the Bank of America. This is prima facie evidence that the name of the maker of the check was also fictitious. (*People* v. *Roche,* 74 Cal.App. 556, 559 [241 P. 279].) An intent to defraud may be inferred from the fact that a fictitious instrument is presented for payment.

(*People* v. *Sheeley,* 151 Cal.App.2d 611, 613 [311 P.2d 883].)

Possession of an instrument recently forged by one claiming under it is evidence against the possessor. (*People* v. *Smith,* 103 Cal. 563, 566 [37 P. 516]; *People* v. *Pounds,* 168 Cal.App.2d 756, 759 [336 P.2d 219].)

The facts in the case before us are quite similar to those present in *People* v. *Murrie,* 168 Cal.App.2d 770 [336 P.2d 559]. In the *Murrie* case defendant was tried for violating Penal Code section 470. Defendant therein was also the payee on a check which he had endorsed and, as in the case before us, defendant also claimed that the check was given to him completely made out by a third party who owed him money. In the *Murrie* case, as in the present instance, defendant merely testified to this story but failed to call the alleged third party as a witness. The court declared in the *Murrie* case that in passing on the credibility of defendant and the weight to be given to his testimony it was entitled to take into consideration his interest in the outcome of the case.

While in the case before us defendant has the benefit of the testimony of the handwriting expert that in his opinion defendant did not write the face of the check, which testimony was not present in the *Murrie* case, nevertheless in other respects the facts in the two cases are quite comparable. It is within the exclusive province of the jury to determine the credibility of the witnesses as to the truth or falsity of the facts upon which a determination depends. (*People* v. *Carlson,* 73 Cal.App.2d 933, 940 [167 P.2d 812].)

In his concluding point defendant asserts that he could not be legally adjudged guilty on both counts in the information for the reason that a violation of Penal Code section 470, the gist of which is the signing or forgery of a false instrument, necessarily includes a violation of Penal Code section 476, the gist of which is the making or passing of a fictitious instrument. The crime of making or passing a fictitious instrument may be brought under either of the two sections. (*People* v. *Carmona,* 80 Cal.App. 159, 163 [251 P. 315].)

In the case of *People* v. *Winthrop,* 88 Cal.App. 591, 597 [264 P. 263], a defendant was accused of having committed a single act which violated both sections 470 and 476, Penal Code. There, as in the instant case, the jury returned a verdict of guilty on all counts, although the passing of a single forged check was involved. The court therein upheld the validity of the prosecution for forgery under both sections of the Penal

Code. The defendant was sentenced on each count with the sentences to run concurrently and therefore, the court stated, he suffered no prejudice.

However, in *People* v. *Kehoe,* 33 Cal.2d 711, 716 [204 P.2d 321], where a defendant was found guilty of grand theft and of a violation of Vehicle Code section 503, the Supreme Court ruled to the contrary, stating: "Although the sentences were ordered to run concurrently, to 'preclude the dual judgments of the trial court from hereafter working any possible disadvantage or detriment to the defendant in the later fixing of his definite term of the [Adult Authority]' (*People* v. *Craig,* 17 Cal.2d 453, 458 [110 P.2d 403]), the judgment, insofar as it finds Kehoe guilty of a violation of section 503 of the Vehicle Code, is reversed with directions to the trial court to dismiss count two of the information." (See also *People* v. *Nor Woods,* 37 Cal.2d 584, 586 [233 P.2d 897].)

In the People's brief it is commendably noted that the sentencing of defendant in the case before us on both Counts I and II may violate the provisions of Penal Code section 654, which provides: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. . . ."

In *People* v. *Brown,* 49 Cal.2d 577 [320 P.2d 5], at page 591, the Supreme Court of this state declared that "Section 654 has been applied not only where there was but one 'act' in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654. Where the question is whether the transaction is divisible or indivisible, each case must be resolved on its facts."

Whether a course of criminal action is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the action. If all the offenses were incident to one objective defendant may be punished for any one of such offenses but not for more than one. (*Neal* v. *State,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].)

In *People* v. *Knowles,* 35 Cal.2d 175, 187 [217 P.2d 1], the Supreme Court stated: "If a course of criminal conduct

causes the commission of more than one offense, each of which can be committed without committing any other, the applicability of section 654 will depend upon whether a separate and distinct act can be established as the basis of each conviction, or whether a single act has been so committed that more than one statute has been violated. If only a single act is charged as the basis of the multiple convictions, only one conviction can be affirmed, notwithstanding that the offenses are not necessarily included offenses. It is the singleness of the act and not of the offense that is determinative.''

Our review of the facts in the instant case leads us to the conclusion that all of the offenses were incident to one objective and that defendant may be punished for only one of such offenses. Only one conviction can be affirmed. The Supreme Court has indicated that in such circumstances the conviction for the more serious of the two offenses must be affirmed and the conviction of the lesser offense reversed. (*People* v. *Brown*, 49 Cal.2d 577, 593 [320 P.2d 5] ; *People* v. *Kehoe*, 33 Cal.2d 711, 716 [204 P.2d 321].) The more serious of two offenses has been held to be the one for which the Legislature has prescribed the greater punishment. (*People* v. *Knowles*, 35 Cal.2d 175 [217 P.2d 1].)

The maximum penalties applicable for violations of Penal Code sections 470 and 476 are identical and under those circumstances it would appear that in the eyes of the Legislature the two offenses are on a par with one another. (See *People* v. *Clemett*, 208 Cal. 142, 147 [280 P. 681].) Although the facts in the case justify conviction upon either count, the offense of issuing a fictitious check in violation of Penal Code section 476 appears to more closely fit the circumstances of this case.

For the reasons above stated, the order denying the motion for new trial is affirmed; the judgment of conviction under Count I, issuance of a fictitious check, is affirmed; and the judgment of conviction under Count II, forgery is reversed.

Jefferson, J., and Balthis, J., concurred.