[Crim. No. 7984. Second Dist., Div. One. Dec. 5, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. HENRY
JACKSON, JR., Defendant and Appellant.

Henry Jackson, Jr., in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Phillip M. Rohlin, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was convicted of robbery by the trial court; he was found not to be personally armed at the

time of the commission of the offense. He appeals from the judgment of conviction claiming among other things that "there was to [*sic*] much flaws in this case for conviction"; but his sole claim of error seems to be the insufficiency of the evidence to support the judgment. His argument consists primarily of a recital of testimony he believes to be favorable to the defense.

While defendant admitted that a robbery took place and that he was present, he denied he was a willing participant. There is much dispute concerning certain material facts; and presented on the record before us is the all too common situation of the trial judge, after hearing and observing the witnesses and weighing their testimony, accepting the People's version of what occurred and rejecting defendant's testimony. (*People* v. *Murrie,* 168 Cal.App.2d 770 [336 P.2d 559].) It is the sole province of the trial judge to determine the credibility of witnesses, weigh the evidence and resolve all factual conflicts. (*People* v. *Robles,* 183 Cal.App.2d 212 [6 Cal.Rptr. 748]; *People* v. *Gardner,* 177 Cal.App.2d 43 [1 Cal. Rptr. 830].) Thus, viewing the evidence in a light most favorable to respondent (*People* v. *Caritativo,* 46 Cal.2d 68 [292 P.2d 513]), we are satisfied that defendant was an accomplice of the man who robbed the gas station attendant with the use of a shotgun and, therefore, a principal in the commission of the robbery. (Pen. Code, § 31.)

At approximately 12:35 a. m. defendant, wearing a white sweater, walked into a service station and asked Brenner, the attendant, for a can of gasoline. Brenner told him the can was out; defendant replied that he would get one from his car. As he started to leave defendant saw McLain approach, and said to Brenner, "Well, here comes my friend now." McLain walked up to Brenner with a raised shotgun, pointed it at him and said, "I want all your money." Brenner took $35 out of his right-hand pocket; when asked if he had any more he took some change out of another pocket. Defendant took the change from Brenner; Brenner was then told to walk to the rear of the station, and defendant and McLain told him, "Lay down because we don't want to hurt you." Brenner did so; defendant and McLain ran from the station after seeing a cruising patrol car, got into defendant's automobile and defendant drove away. Officer Handley, driving a black and white patrol car, having been informed of the robbery and a description of two male negroes, one wearing a white sweater, observed a two-door Chevrolet, southbound on Ver-

dugo carrying two occupants of that description. Defendant, wearing a white sweater, was driving. The officer pursued him and when he was close to the rear of defendant's car he attempted to stop it by turning on his red light and using his horn; although but a car length behind, defendant failed to stop. Finally, as if to park, defendant drove up in front of a bar; as the officer pulled over to park behind him, defendant drove away. The officer again pursued him and defendant turned right on Locke Haven, at which time both doors were open. When police lights were finally focused on the car both doors were closed but there was a movement inside the vehicle. Then both doors again opened and a passenger ran sideways from the car carrying an object, at that time unidentifiable, but considerably longer than wide. Defendant walked back to the police vehicle; the white sweater was found in the rear of defendant's car. Officer Handley asked defendant who was with him; he answered he was alone in the car. When the officer said he saw someone running from the car, defendant replied that his passenger was on probation and didn't want to get into trouble. Meanwhile, another officer drove up and, searching the area where defendant turned on Locke Haven, found a shotgun about 500 or 1000 feet west of the location where defendant and Handley were standing. Later Brenner said it appeared to be the shotgun McLain had used in the robbery. Handley recovered from defendant's right front pocket approximately the same change Brenner turned over to him except that Brenner gave him more halves; however, after leaving the scene of the robbery defendant went to another gas station and bought $3.00 worth of gas with some of Brenner's change. On the stand defendant admitted a conversation with police on the afternoon of the robbery and said that while he told the officer of other activities, he did not mention the robbery; however, on cross-examination he admitted that he did tell him about the robbery, though he claimed to be an unwilling participant.

On his defense defendant told a story about agreeing to take friends, Herbert McLain and two others, to Pacoima for $2.00 and a half of a tank of gas; that on the way his gas ran low and he parked 125 feet from Brenner's gas station on a side street and went in for a can of gas, but that Brenner had no can; that he then went into the station office and sat on a stool during which time McLain came and held up Brenner; that after taking his money McLain said to Brenner, "I know

you have some more money. Would you give it to this fellow sitting there?''; and Brenner handed him (defendant) the money; that McLain toook Brenner outside and told him to lie down and he (defendant) and McLain ran to his car and drove away. He claimed that he did not know about the robbery until he saw McLain with the gun in the service station, and that he unwillingly participated in the crime.

Defendant's version of what occurred, while omitting numerous material details which tend to incriminate him, admits to the robbery and his participation therein; however, the evidence is disputed concerning defendant's activities in the station, his prior knowledge that a robbery would take place and his flight from the police. Pointing to his willing implication in the crime are his activities prior to, and conduct during, the robbery—that of parking his vehicle on a side street a distance from the gas station, going alone into the station first, obviously to look it over, standing by while McLain held up the attendant with a shotgun, and assisting in taking the change from Brenner, walking him to the back of the station and telling him to lie down; and his conduct after the robbery—running to avoid a cruising patrol car, fleeing the premises in his own car, spending some of the stolen change for gas, refusing to stop knowing he was being pursued by police for that purpose, again fleeing the officers by stopping in front of the bar and then speeding away, his activities in the car just before he stopped, his conduct when finally apprehended, and his false and contradictory statements to police after his arrest. These are all incriminatory circumstances which the trial court could consider in determining defendant's guilt. Flight, for instance, is a factor tending to connect the accused with the commission of an offense and shows a consciousness of guilt (*People* v. *Gautt*, 190 Cal. App.2d 355 [11 Cal.Rptr. 805]; *People* v. *Parmenter*, 186 Cal. App.2d 509 [9 Cal.Rptr. 135]), as does an admittedly false explanation given by an accused. (*People* v. *Smith*, 184 Cal. App.2d 606 [7 Cal.Rptr. 607]; *People* v. *Stanley*, 162 Cal. App.2d 416 [327 P.2d 973]; *People* v. *Peete*, 54 Cal.App. 333 [202 P. 51].)

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.