[No. S037601. May 8, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS ANDREW PALASCHAK, Defendant and Appellant.

## COUNSEL

Glenn Durfee and Creig Alan Dolge for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Roy C. Preminger, David A. Wildman and Marc E. Turchin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LUCAS, C. J.**—In this case, we consider whether a person who possesses illegal drugs prior to ingesting them may be convicted of the offense of possessing those drugs. As will appear, we conclude that the offender may be so convicted despite having ingested the drugs prior to arrest. To rule otherwise would read into the drug possession statutes a "possession when arrested" requirement that would permit persons facing arrest for possession of illegal drugs to avoid possession charges merely by ingesting those drugs.

### FACTS

Defendant Douglas Andrew Palaschak appeals from a judgment convicting him of possession of lysergic acid diethylamide (LSD). (Health & Saf.

Code, § 11377, subd. (a).) The record discloses the following facts, largely taken from the Court of Appeal opinion herein:

Jessica Jobin was a receptionist in the law office of defendant Douglas Andrew Palaschak. In early May 1991, defendant informed Jobin he had taken hallucinogenic drugs and wanted to try LSD. He asked if she knew where he could obtain that drug, and she agreed to inquire about finding some. Defendant cautioned Jobin not to tell anyone of this conversation.

On the evening of May 7, defendant loaned his car to Jobin so that she could obtain some LSD. Jobin drove to a "Dead Head House," occupied by ostensible fans of the Grateful Dead rock group. There, she eventually obtained 50 "hits" or doses of LSD in blotter paper form. On the following day, Jobin placed two hits of LSD in a birthday card and presented the card to defendant as a birthday gift. Defendant opened and read the card, and then placed it in his desk drawer.

One day later, defendant repeatedly asked Jobin to take some LSD with him. She finally agreed. Defendant consumed one and one-half hits of LSD and Jobin, one-half hit. Jobin and defendant were soon giggling in defendant's office. Melissa S., age 17, hired that day as a secretary, observed their antics. Defendant volunteered to Melissa that he was "frying on acid" and asked her to join them. Jobin gave Melissa two hits of LSD, which Melissa later discarded. Melissa stayed in defendant's office for awhile but then left and summoned police officers.

The police officers arrived at defendant's office and Jobin allowed them to enter. They found defendant and Jobin experiencing symptoms of LSD ingestion, namely, hallucinations, confusion, dizziness, and lip-licking. Defendant volunteered that he had taken LSD and requested assistance from the officers. Jobin produced the 46 remaining hits of LSD from her purse at the officers' request. The officers then arrested Jobin and defendant.

One month after his arrest, defendant admitted to two newspaper reporters that he had ingested LSD on the day of his arrest. He stated that the drug provided "a better social environment" in his office.

The prosecutor charged defendant with conspiracy to possess LSD (Health & Saf. Code, § 11377, subd. (a); Pen. Code, § 182), possession of LSD (Health & Saf. Code, § 11377, subd. (a)), and furnishing or attempting to furnish LSD to a minor (Health & Saf. Code, § 11380, subd. (a)). The jury acquitted defendant of conspiracy to possess LSD and of attempting to furnish LSD to a minor. The jury did, however, convict defendant of simple possession of LSD.

During deliberations, the jury asked the trial judge whether "possession [has] to be at the time of arrest?" The trial judge declined to answer "Yes" or "No" but reinstructed the jury concerning the elements of the criminal offense of possession of a controlled substance. (CALJIC No. 12.00.)

At sentencing, the trial judge reduced defendant's conviction to a misdemeanor offense and placed him on probation for 36 months, with a condition of 90 days' imprisonment in the county jail. On appeal, defendant contended that his conviction of possession of LSD was unsupported by substantial evidence. Although the Court of Appeal agreed, we will reverse its judgment.

## DISCUSSION

The Court of Appeal, by a two-to-one vote, ruled that defendant was improperly charged with possessing LSD because, by the time of his arrest, he had ingested the LSD formerly in his possession and no longer had "dominion and control" over the substance in his body. Because no statute criminalizes use or ingestion of LSD (see *People* v. *Spann* (1986) 187 Cal.App.3d 400, 404-406 [232 Cal.Rptr. 31] (hereafter *Spann*); but see Pen. Code, § 647, subd. (f) [being under influence of liquor, drugs or controlled substances in public place]), the Court of Appeal's reversal of defendant's conviction presumably would exonerate him entirely from criminal liability in this matter.

The Court of Appeal majority relied primarily on cases holding that evidence of drug *ingestion*, such as nonusable residue or traces of narcotics, is insufficient to sustain an unlawful *possession* charge. (E.g., *People* v. *Leal* (1966) 64 Cal.2d 504, 510-512 [50 Cal.Rptr. 777, 413 P.2d 665] (hereafter *Leal*) [holding that possession of narcotics paraphernalia bearing useless traces or residue of narcotics is insufficient to sustain conviction for knowing narcotics possession]; *Spann, supra,* 187 Cal.App.3d at p. 409 ["non-criminal use of a controlled substance in an institution may not be . . . bootstrapped into the crime of possession"]; *People* v. *Sullivan* (1965) 234 Cal.App.2d 562, 565 [44 Cal.Rptr. 524] (hereafter *Sullivan*) [holding that discovery of defendant's heroin kit containing minute traces of heroin residue was insufficient to establish possession]; see *People* v. *Rubacalba* (1993) 6 Cal.4th 62, 64-67 [23 Cal.Rptr.2d 628, 859 P.2d 708] [*Leal* rule limited to cases involving substances useless in form or quantity; no requirement exists that any particular purity or potential narcotic effect be proven].)

The Court of Appeal relied heavily on the following language from the majority opinion in *Sullivan*: "Were we to accept evidence of recent past possession of narcotics as equivalent to proof of present possession of narcotics, then we could charge every addict who was currently hot with possession of a narcotic, since he must have had possession of the narcotic in the recent past in order to come under its influence." (234 Cal.App.2d at p. 565.)

We quoted the foregoing language with approval in an unlawful search case, stating that, "it seems clear that the mere presence of two burnt marijuana seeds would not give rise to a reasonable inference or strong suspicion that the occupants of the apartment in which the seeds were found were *presently* guilty of a crime. It is now well established that evidence of useless traces or residue of narcotic substances do not constitute sufficient evidence to sustain a conviction for possession of narcotics. [Citations.] Although the presence of two burnt marijuana seeds might reasonably suggest that defendant or another occupant of the apartment *formerly* possessed and used marijuana, that inference would not justify their arrest for *present* use, possession or sale." (*People* v. *Fein* (1971) 4 Cal.3d 747, 754 [94 Cal.Rptr. 607, 484 P.2d 583], italics added.)

The Court of Appeal majority also noted that the Legislature, in other contexts, has often punished use of drugs less severely than possession thereof (see *Spann, supra*, 187 Cal.App.3d at pp. 404-406), thus indicating some legislative intent to distinguish between use and possession of illegal drugs. According to the Court of Appeal majority, a rule that would allow a possession charge and conviction to be based solely on evidence of use might unduly blur the distinction between use and possession. Thus, the Court of Appeal majority concluded that "to prove possession the prosecution must show possession other than what the defendant had consumed."

The Court of Appeal dissent herein concluded there was ample evidence to sustain defendant's possession conviction. As the dissent observed, "[t]he People introduced substantial evidence to satisfy each of the[] elements [of possession required under CALJIC. No. 12.00]. Appellant exercised control over the LSD. He knew the LSD was in his office, knew it was a controlled substance, and knew it was a usable amount. [Fn. omitted.]"

The dissent's analysis seems correct, for we can discern no good reason why substantial evidence of past *possession* of LSD (within the period of the applicable statute of limitations) should be deemed insufficient to sustain a conviction of that offense. There may be some justification for holding, as prior cases have held, that evidence of *ingestion* of drugs, standing alone,

should not be deemed adequate to sustain a possession charge, although that issue is not presently before us. Ingestion, whether or not accompanied by useless traces or residue, at best raises only an inference of prior possession.

As stated in *Sullivan, supra,* 234 Cal.App.2d at page 565, if proof of ingestion of illegal drugs were sufficient to sustain a possession charge, then every person under the influence of an illegal drug could be charged with possessing it because, logically, one who ingests a drug must have possessed it at least temporarily. Yet it is arguable that not all occasions of drug use necessarily and inevitably involve criminal possession. For example, depending on the circumstances, mere ingestion of a drug owned or possessed by another might not involve sufficient control over the drug, or knowledge of its character, to sustain a drug possession charge. (See *People* v. *Camp* (1980) 104 Cal.App.3d 244, 247-248 [163 Cal.Rptr. 510] [essential elements of possession of controlled substance].)

But the *broad* dictum in *Fein* and *Sullivan,* both *supra,* suggesting that evidence of past possession is inadequate to sustain a conviction for present possession, makes little sense when applied to a case, such as the present one, in which there exists sufficient direct or circumstantial evidence of past possession, over and above evidence of mere use or ingestion. Here, as the People correctly observe, defendant was "charged with possession on May 9, 1991, not possession at the time of arrest."

A simple hypothetical example may help to illustrate the primary problem with the Court of Appeal majority's analysis. If the evidence showed that the defendant was in possession of an illegal drug which he *destroyed* by flushing it down the toilet, it is clear that defendant nonetheless could be convicted of illegal possession based on evidence (whether direct or circumstantial) that the substance was in his possession immediately before he was arrested. (See, e.g., *People* v. *Mijares* (1971) 6 Cal.3d 415, 422 [99 Cal.Rptr. 139, 491 P.2d 1115] [leaving intact rule sustaining narcotics possession charge despite defendant's disposal of contraband immediately prior to arrest]; *People* v. *Wesley* (1990) 224 Cal.App.3d 1130, 1145-1146 [274 Cal.Rptr. 326]; *People* v. *Garcia* (1967) 248 Cal.App.2d 284, 288-291 [56 Cal.Rptr. 217].)

Similarly, loss or destruction of evidence *by ingestion* should not defeat a possession charge. (See *People* v. *Stump* (1971) 14 Cal.App.3d 440, 443-444 [92 Cal.Rptr. 270] [possession of heroin established by circumstantial evidence despite loss of direct evidence by reason of defendant's swallowing balloons containing the drug]; *People* v. *Bianez* (1968) 259 Cal.App.2d 76, 80-81 [66 Cal.Rptr. 124]; *People* v. *Chrisman* (1967) 256 Cal.App.2d 425,

431-432 [64 Cal.Rptr. 733] [charge of furnishing narcotics to another established despite consumption of drug]; *People* v. *Smith* (1960) 184 Cal.App.2d 606, 609-610 [7 Cal.Rptr. 607] [marijuana possession conviction sustained despite defendant's attempt to eat the evidence shortly before arrest].)

In short, we see no reason why a drug possession charge could not be based on direct or circumstantial evidence of past possession. As the concurring justice in *Sullivan* observed, the narcotics possession statutes do not require proof of possession *at the very time of arrest.* (234 Cal.App.2d at p. 567.)

■ The essential elements of possession of a controlled substance are "dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially." (*People* v. *Camp, supra,* 104 Cal.App.3d at pp. 247-248; see *People* v. *Williams* (1971) 5 Cal.3d 211, 215 [95 Cal.Rptr. 530, 485 P.2d 1146] [essential elements of possession in narcotics cases may be established circumstantially]; *People* v. *Rushing* (1989) 209 Cal.App.3d 618, 621 [257 Cal.Rptr. 286] [same]; cf. *People* v. *Rubacalba, supra,* 6 Cal.4th 62 ["usable amount" requirement].)

■ The foregoing elements of possession were amply established by the evidence in this case, which included the testimony of a percipient witness, defendant's secretary, Jobin. Thus, the record shows that defendant requested and obtained from Jobin two doses or "hits" of LSD contained in a birthday card. Defendant kept the card for a day, then removed the LSD from the card and ingested one and one-half doses, giving the remaining half dose to Jobin. On being arrested, defendant readily admitted ingesting the drug. He confirmed this fact to news reporters. The arresting officers testified that defendant was under the influence of LSD, and lab technicians verified that the remaining doses of LSD in Jobin's possession were indeed LSD. As the Court of Appeal majority conceded, "there is no question that Defendant possessed LSD prior to ingesting it."

Although *Fein* and *Sullivan* reached defensible results on their facts, we disapprove the broad dictum in those cases to the effect that evidence of past possession cannot sustain a conviction for present possession. If, as in the present case, direct or circumstantial evidence establishes that the defendant possessed an illegal drug during the period of the applicable statute of limitations, no compelling reason appears why that evidence should not be sufficient to sustain a possession conviction. Certainly, the drug possession statutes contain no such requirement. The additional, fortuitous fact that the

defendant has consumed or ingested the drug likewise should not preclude a finding of his prior unlawful possession of it.

The judgment of the Court of Appeal is reversed.

Mosk, J., Kennard, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.

Appellant's petition for a rehearing was denied June 29, 1995.