Filed 5/20/14  P. v. Mills CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

|  |  |
|---|---|
| THE PEOPLE, | C073687 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F5458) |
| v. | |
| MICHAEL TYREE MILLS, | |
| Defendant and Appellant. | |

A jury found defendant Michael Tyree Mills guilty of possession of heroin. (Health & Saf. Code, § 11350, subd. (a).)  The trial court found true a strike allegation (Pen. Code, §§ 667, subds. (b)-(i), 1170.12)[1] and three prior prison term allegations (§ 667.5, subd. (b)).  Defendant was sentenced to prison for seven years consisting of twice the middle term of two years plus three years for the prior convictions.

On appeal, defendant contends there was insufficient evidence that he knowingly had a right to exercise custody and control of contraband located by officers.  We affirm.

_____

[1]  Undesignated statutory references are to the Penal Code.

1

FACTS

*Prosecution Case-in-Chief*

The parties stipulated that, in June 2012, "law enforcement had information" that "the address of record for the defendant" was an apartment in Redding.

On June 6, 2012, around 6:00 p.m., Department of Corrections and Rehabilitation Special Agent John Harrison and Redding Police Department Sergeant Walt Bullington went to that apartment in order to conduct a search. The parties stipulated that the ensuing search was lawful.

Defendant was not present when the officers arrived. Two other residents, Priscilla and Michael Bledsoe, answered the door. The Bledsoes directed the officers to a room that they identified as defendant's bedroom.

Sergeant Bullington searched the bedroom closet. On a shelf in the closet, he located a digital gram scale of the sort used for weighing drugs. Also in the closet were articles of men's clothing including a navy peacoat that was long, "almost thigh length."

Sergeant Bullington searched the pockets of the coat. Inside one pocket he located a statement from a credit union in Redding. The statement bore defendant's name, the name "James Bledsoe Rep Payee," and the address of the searched apartment. A representative payee is a person who receives money on behalf of another. The September 2011 statement covered the four days from the account's opening on the 27th through the end of the period on the 30th. No evidence suggested the presence of more recent statements for the account.

Inside the other coat pocket, Sergeant Bullington found "bindle bags," or clean one-inch or two-inch plastic baggies commonly used for packaging methamphetamine, heroin, and other unlawful drugs. The "bindle bags" were inside a larger bag.

Inside the coat pocket, Sergeant Bullington also found a usable quantity of a black, sticky substance suspected to be tar heroin. Testing by a criminalist confirmed that the substance contained heroin with a net weight of 0.05 grams.

2

In the bedroom, but not in the closet, were a child's bed, children's toys, and possibly a crib. In addition to the Bledsoes, two toddler-age children were present.

*Defense*

The defense rested without presenting evidence or testimony.

DISCUSSION

*Substantial Evidence of Knowing Possession of Heroin*

Defendant contends the evidence at trial was insufficient to prove that he knowingly had a right to exercise custody and control of the contraband in the closet. Specifically, he claims the credit union statement and other circumstances did not constitute substantial evidence that he had knowledge of the contraband or the right to exercise control over the contents of the coat. We disagree.

A. *Standard of Review*

"On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the [judgment], and must presume every fact the jury could reasonably have deduced from the evidence. [Citations.] Issues of witness credibility are for the jury. [Citations.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480 (*Boyer*).)

B. *Elements of Possession of a Controlled Substance*

"The essential elements of possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially.' [Citations.]" (*People v. Palaschak* (1995) 9 Cal.4th 1236, 1242 (*Palaschak*); see *People v. Low* (2010) 49 Cal.4th 372, 386.)

3

Mere proximity, standing alone, is not sufficient evidence of possession. (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417.)  Evidence raising "no more than a speculative possibility that [the defendant] had an opportunity of access to a place where the [contraband was] kept" is insufficient to support a finding of possession. (*People v. Mitchell* (1975) 53 Cal.App.3d 21, 25.)

But " 'possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another.  [Citation.]' " (*People v. Busch* (2010) 187 Cal.App.4th 150, 162, quoting *People v. Williams* (1971) 5 Cal.3d 211, 215.)

## C.  *Sufficiency of Evidence*

The parties stipulated that law enforcement possessed information that the address of record for defendant was the searched apartment.  Because we "presume every fact the jury could reasonably have deduced from the evidence," we presume that defendant *in fact resided* at his address of record.  (*Boyer, supra,* 38 Cal.4th at pp. 479-480.) Defendant counters that there was no evidence the police "had any knowledge of where he actually resided."  But defendant "must *affirmatively demonstrate* that the evidence is insufficient," and he "does not show the evidence is insufficient by . . . arguing about what evidence is *not* in the record."  (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

When the police arrived, occupants Priscilla and Michael Bledsoe directed the police to a room they identified as defendant's bedroom.  Defendant counters that "[n]o evidence was presented to show whose bedroom it was."  This argument is based on Agent Harrison's affirmative answer to the prosecutor's question whether the officers were directed to "a particular room within the apartment."  But Agent Harrison later testified that the credit union statement was significant "[b]ecause it was located in the room that was *identified as belonging to* [*defendant*]."  (Italics added.)  Reasonable jurors

4

could infer that the Bledsoes had provided this "identifi[cation]" to the officers. Agent Harrison's testimony thus provided sufficient evidence of "whose bedroom it was." (*Boyer, supra,* 38 Cal.4th at pp. 479-480.)

Defendant disagrees, noting that the bedroom contained children's toys, a child's bed, and possibly a crib. While these items suggested that the bedroom was jointly used by young children, and hence by their parents, the items did not disprove the Bledsoes' representation that the bedroom -- and its closet where the contraband was found -- were used at least jointly by defendant. "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar* (2010) 51 Cal.4th 47, 60, citing *People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

In the closet of that bedroom, officers found articles of men's clothing including a navy peacoat. Defendant's ownership of the coat could be inferred from its contents: a credit union statement bearing defendant's name and the address of the searched apartment.

Defendant counters that, because the statement listed a representative payee, James Bledsoe, who shared at least a surname with the other residents, "it appears that Mr. [James] Bledsoe, not [defendant], had control of the account." But reasonable jurors could infer that, even if the payee had control of the account, the owner -- defendant -- could possess monthly statements documenting the payee's handling of defendant's money. (*Boyer, supra,* 38 Cal.4th at pp. 479-480.) The fact the credit union had addressed the statement to *both* defendant *and* James Bledsoe, rather than to James Bledsoe alone, supports this inference.

Defendant counters that knowledge of how his money was handled was "of nominal, if any, use to" him. But nothing in the record supports this argument. The fact that the credit union statement may have "had meaning for" James Bledsoe did not compel the jury to conclude that the coat belonged to him rather than defendant. The fact

the "prosecution offered no evidence to explain the appearance of Mr. [James] Bledsoe's name or his payee capacity" does not mean that the evidence was insufficient. (*People v. Sanghera, supra,* 139 Cal.App.4th at p. 1573.)

For all these reasons, we conclude there was sufficient evidence that defendant knew of the heroin's presence in a pocket of the peacoat and that defendant had the right to exercise dominion and control over the heroin. (*Palaschak, supra,* 9 Cal.4th at p. 1242.)

The People contend, and defendant does not dispute, that an inference of knowledge of the substance's character as a restricted drug arises from the presence of "bindle bags," commonly used to package heroin, in a pocket of the same peacoat. The presence of a digital scale, commonly used to weigh drugs, on a shelf in the same closet further supports an inference of knowledge. (*Palaschak, supra,* 9 Cal.4th at p. 1242.) Defendant's conviction is supported by substantial evidence.

DISPOSITION

The judgment is affirmed.

                                               \_\_\_\_BLEASE_____, Acting P. J.

We concur:

     \_\_\_\_HULL_____, J.

     \_\_\_\_MAURO_____, J.

6