Filed 9/16/14  P. v. Sullivan CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C074858 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F06818) |
| v. | |
| GARY G. SULLIVAN, | |
| Defendant and Appellant. | |

In October 2012, defendant Gary G. Sullivan pleaded no contest to possession of methamphetamine.  (Health & Saf. Code, § 11377, subd. (a).)[1]  Over the People's objection, defendant was sentenced to state prison for two years, execution of sentence was suspended, and he was placed on Proposition 36 probation.

In February and May 2013, defendant admitted drug-related violations of his probation.  He remained on Proposition 36 probation after each violation.

---

[1] Undesignated statutory references are to the Health and Safety Code.

1

In July 2013, a declaration was filed alleging that defendant willfully violated his probation by violating section 11377. Following a contested hearing, the trial court found by a preponderance of evidence that defendant violated the terms of his probation. The court terminated defendant from the Proposition 36 program.

Defendant contends his due process right to notice of the charges against him was violated because the declaration alleged one violation—possession of a controlled substance—but the court found he had committed two different violations: associating with a known drug user and possessing drug paraphernalia. We conclude the court ruled on the pleaded violation and its remarks regarding an unpleaded violation were not prejudicial. We shall affirm.

## FACTUAL BACKGROUND

### Original Offense

The facts of defendant's original possession of methamphetamine are not at issue and need not be set forth in this opinion.

### Probation Violation

*Prosecution Case-in-chief*

On July 24, 2013, at 4:30 p.m., Sacramento County Sheriff's Deputy James Petrinovich conducted a probation search of defendant's residence. The home was owned by an elderly man and had at least three bedrooms. Defendant and his girlfriend, Kelie Liason, lived in the home along with at least one other person.

Deputy Petrinovich contacted defendant and Liason in their bedroom. In that room, the deputy found a small digital scale with a white powdery residue that appeared to be methamphetamine. He also found 10 to 15 packets of Crystal Light on defendant's bed. Petrinovich found a container of Crystal Light on shelving just outside of defendant's bedroom. Inside the container, he found 0.5 grams of powder that tested

2

presumptively positive for methamphetamine. The container was less than two feet away from defendant's bedroom.

*Defense*

The homeowner, John Thorne, testified that he resided at the home along with defendant, Liason, Dennis Kelly, and Dennis's girlfriend. Thorne described the shelving outside defendant's bedroom as a linen closet. He said that everyone in the house used that closet.

Thorne previously had seen defendant under the influence of drugs. There was nothing on the day of the probation search or the preceding days that led Thorne to believe that defendant was using methamphetamine.

Liason testified that defendant is her boyfriend. They were asleep in their bed when law enforcement searched their house. Liason denied that there were 10 to 15 packets of Crystal Light on their bed and had no idea how the drugs "came to be" in the hall closet. Everyone had access to that closet.

Liason knew the methamphetamine did not belong to defendant because she was with him and he did not use drugs. She had not seen him use drugs in the month and a half they had lived together, nor had she seen a scale in their bedroom.

Liason said there were Crystal Light containers "all over the house" because the residents use them to "store screws and pencils and all kinds of things in those cans."

Defendant testified that the drugs found in the house belonged to his housemate Dennis, who was a drug user. Defendant was not aware that there were drugs in the Crystal Light container in the hallway.

Defendant had a random drug test on July 16, 2013. He denied that there were 10 to 15 packets of Crystal Light on his bed, stating Liason "keeps a better house than that." Defendant said the scale found in the bedroom was not Liason's and said the scale "has

3

survived approximately four similar searches sitting exactly the same way that it was sitting the day that they searched." No one other than defendant and Liason was supposed to have access to their bedroom.

Defendant said the area where the Crystal Light container was found was a "community area" inside the home. He acknowledged that he had access to it. Defendant did not spend much time at the house because he was trying to build a business.

After the trial court expressed concern about defendant's admission that he was residing with a known drug user, which violated the terms of his probation, the court allowed defendant's counsel to reopen the evidentiary phase of the hearing and reexamine defendant.

Defendant testified that he was not aware of whether or not Dennis was using drugs at that time. Defendant was aware that Dennis had used drugs in the past, but he was not aware of what Dennis did on a day-to-day basis. Dennis was the person who merely rented the other room from Thorne. Defendant said that had he known there were drugs in the house, he would have thrown them away.

## DISCUSSION

### *Due Process Notice Contention*

Defendant contends his due process right to notice of the charges against him was violated because the petition alleged one violation—possession of a controlled substance—and the court found true different violations: associating with a known drug user (Dennis) and possessing drug paraphernalia. We conclude the court ruled on the pleaded violation, and its remarks regarding an unpleaded violation were not prejudicial.

4

## A. Background

Defendant's probation conditions included that he "not knowingly use, handle or have in [his] possession . . . narcotics, dangerous drugs or controlled substances of any kind unless lawfully prescribed for [him] by a licensed physician" and that he "not associate with persons [he] knows to be illegal users or sellers of . . . dangerous drugs or narcotics . . . ."  The probation conditions did not expressly address drug paraphernalia or digital scales but did require defendant to obey all laws applicable to him.

On July 26, 2013, the People filed a petition for violation of probation alleging that "[o]n or about July 24, 2013, said defendant committed a violation of Section 11377 of the Health and Safety Code."  The allegation date was circled in handwriting and the time of the violation (4:30 p.m.) was handwritten above the allegation.

At the probation revocation hearing, the parties presented evidence and argued whether defendant had violated section 11377.  This exchange ensued:

"THE COURT:  [Defense counsel,] I'd like you to address something entirely different.  Your client testified, I suppose in order to suggest that the drugs were not his, but his roommate's,[2] that his roommate was the drug user and he knows he's a drug user.

"[DEFENSE COUNSEL]:  Right.

"THE COURT:  His grant of probation requires that he not associate with individuals that are known to be drug users, so he's in violation based on that portion of his testimony.

"[DEFENSE COUNSEL]:  He didn't say that he knew that he was using drugs at the time.  He said he didn't know that there were drugs in the house.

---

[2]  The reference to roommate appears to be to Dennis--not defendant's girlfriend Liason.

"THE COURT: He didn't know there were drugs in the house, but he also said that he knew his roommate was a drug user.

"[DEFENSE COUNSEL]: There was no time given.

"THE COURT: The reason for the question, the reason it was asked, was to suggest that these drugs were not his, and it was not at all surprising to him that drugs would have been found in the house. They weren't his. They were his roommate's, because he knew his roommate was a drug user. That's exactly the reason [probation condition] number four exists. He's not to live or be around people that are known to him to be drug users except when he is in the—I ran the program. I know what the reasons for these things are. He knows it. [¶] I see him shaking his head just like the other folks in Prop 36. He understands he's not supposed to be around people—because that's the temptation.

"[DEFENSE COUNSEL]: Your Honor, his testimony was that he was not aware that his roommate was doing drugs. He knew that he was a drug user, but not he was aware that there were drugs in the house. He was not aware that—if you'd like, I can open it back up and ask him if he was aware that he was.

"THE COURT: You're welcome to ask him any questions around that area.

"[DEFENSE COUNSEL]: Yes, I will briefly open that back up."

Defense counsel then reopened the evidentiary phase of the hearing and asked defendant about his knowledge of whether Dennis was a drug user. Defendant testified that he knew that Dennis had used drugs in the past. However, defendant did not know what Dennis did day to day. Defendant was not aware of Dennis using drugs while defendant was on Proposition 36 probation.

Following defendant's testimony, the prosecutor argued there was "inconsistent testimony" in that Deputy Petrinovich "testified to finding the Crystal Light on the bed

6

and the Crystal Light can on the shelf," whereas defendant testified "that they don't have any Crystal Light in the room. It was never present." "The Crystal Light can on the shelf, they are unaware of. Someone here is obviously not correct. We can't be telling two different truths and have them . . . committed at the same time. The reason why people lie is because they are aware of their guilt and they are trying to cover up for past mistakes, whatever those mistakes may be. [¶] The fact that [defendant] may or may not have been partaking in drugs at that time is irrelevant when the issue at hand here is whether or not he has possession or control over those drugs. [¶] And based on that evidence of the Crystal Light and its location the location of the room, there is a significant amount of evidence suggesting that he did have control or possession of the drug and was aware of its presence in the home."

Following this argument, the trial court stated, "This would be a . . . different case if it was a beyond a reasonable doubt standard, but it's not. It's a preponderance standard. [¶] For a number of reasons, I believe the defendant is in violation of probation. The association clause, I think he's in violation of that based on his earlier testimony. Even the possession of the scale, I think that says, 'if I had known there were drugs in the house, I would have gotten rid of them or thrown them away.' Yet, he retains a scale. Still, has some sort of residue similar to a crystalline powder residue similar to a narcotic found in the house. [¶] I don't find that there is a difficulty— preponderance level of difficulty case at all. He's in violation of his probation."

### B. Relevant Legal Principles

"At any time during the period of supervision of a person . . . released on probation under the care of a probation officer . . . , . . . the court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe . . . that the person has violated any of the conditions of his or her supervision . . . ." (Pen. Code, § 1203.2, subd. (a).)

7

A trial court has "very broad discretion in determining[] whether a probationer has violated probation." (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443 (*Rodriguez*).)

The California Supreme Court has held that under the federal and state Constitutions, the minimum requirements of due process at a revocation hearing include: written notice of the claimed violations of parole; disclosure of the evidence of the claimed violations; an opportunity to be heard in person and to present witnesses and documentary evidence; the right to confront and cross-examine adverse witnesses; a " 'neutral and detached' " hearing body; and a written statement of the evidence relied on and reasons for revoking parole. (*People v. Vickers* (1972) 8 Cal.3d 451, 457-458.)

"The essential elements of possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially.' " (*People v. Palaschak* (1995) 9 Cal.4th 1236, 1242 (*Palaschak*).)

### *C. Analysis*

Defendant claims the trial court found that he "violated his probation based on his testimony regarding the housemate's use of drugs, a violation of the 'association clause,' and also based on his possession of the digital scale." Defendant argues his due process rights were violated because he had not received written notice that the prosecution sought to revoke probation on either of these grounds.

The People respond that defendant has forfeited his notice contention by failing to assert it in the trial court. Defendant claims an exception to forfeiture applies because the trial court's remarks demonstrate that any objection would have been futile. We forego the subjective futility analysis because, properly understood, the trial court's remarks demonstrate that probation was revoked on a ground alleged in the declaration and petition.

8

It was undisputed that the methamphetamine was within defendant's joint dominion and control within two feet of his bedroom door and that its quantity was sufficient for consumption. The trial court could infer from defendant's history of drug use "10 years ago or so" and from the scale caked with methamphetamine residue found in his bedroom that defendant had knowledge of methamphetamine's character as a restricted dangerous drug. (*Palaschak, supra*, 9 Cal.4th at p. 1242.) Defendant's knowledge of the drug's presence was the only disputed issue.

To resolve that issue, the trial court considered what defendant now claims is an unpleaded probation violation—his possession of the digital scale. The trial court did not purport to find that the scale was drug paraphernalia or that its possession violated the probation condition that required defendant to obey all laws. Instead, the court discussed the digital scale as it related to defendant's credibility. The prosecutor had raised that issue by arguing that "[t]here is inconsistent testimony" and that "[s]omeone here is obviously not correct."

Defendant had testified that if he had known there were drugs in the house he would have thrown them away. The trial court paraphrased this testimony, stating, "if I had known there were drugs in the house, I would have gotten rid of them or thrown them away."

The trial court addressed the credibility issue by contrasting defendant's *testimony* that he would have gotten rid of the drugs with his *behavior* in retaining the scale, stating, "Yet, he retains a scale. Still, has some sort of residue similar to a crystalline powder residue similar to a narcotic found in the house."

The gist of the trial court's remarks is *not* that defendant's possession of the scale violated the condition that he obey all laws; it is that his *testimony* that he would have gotten rid of the drugs is *inconsistent with his behavior* in keeping the scale.

9

The trial court thus resolved the credibility issue adversely to defendant and impliedly found that defendant had knowledge of the methamphetamine a mere two feet from his bedroom. Because defendant had not discarded the scale even though it bore residue similar to the narcotic found in the house, the court could reject his claim that he would have discarded the methamphetamine had he become aware of it.

This was sufficient to support the revocation of probation. (Pen. Code, § 1203.2; *Palaschak*, *supra*, 9 Cal.4th at p. 1242; *Rodriguez*, *supra*, 51 Cal.3d at p. 443.) Although the trial court incorrectly addressed an unpleaded probation violation arising from defendant's association with Dennis, the court also addressed the pleaded probation violation arising from defendant's violation of section 11377.

Defendant's argument presupposes that the trial court revoked his probation based exclusively upon unpleaded grounds of which he had no notice. He does not address whether his claims of due process violation and prejudice could survive our determination that the trial court found true a pleaded violation that is sufficient by itself to warrant revocation of his probation. Any such claim is forfeited. (See, e.g., *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4.)

In any event, the trial court provided a sufficient safeguard of defendant's due process rights when it allowed him to reopen the evidentiary phase of the probation revocation hearing. (See *People v. Felix* (1986) 178 Cal.App.3d 1168, 1172.)

Defendant's other claims of prejudice lack merit. He relies on *Gray v. Raines* (9th Cir. 1981) 662 F.2d 569, 570-573, in which the defendant *first* testified to consensual sexual intercourse as a defense to forcible rape and *then* was surprised by a jury instruction on statutory rape. Here, in contrast, the trial court asked defense counsel to address the unpleaded issue of defendant's association with Dennis *before defendant testified* that he would have gotten rid of the drugs. Pleading the association with Dennis as a probation violation would not have yielded a different result.

10

Defendant argues that, if he had "been on notice that there were numerous reasons that the prosecution was seeking to revoke probation in addition to the possession charge, i.e., on association grounds and for possession of [drug] paraphernalia, he may have decided not to contest the charges." Had he so decided, he could have avoided the prosecutor's argument at sentencing that he was "not an acceptable candidate for the newly formed re-entry court," because he had set the matter for a contested hearing.

The obvious flaw in this argument is that it was the trial court, not the prosecution, that raised the unpleaded probation violation of associating with a known drug user. The claim of prejudice has no merit.

**DISPOSITION**

The judgment is affirmed.

                                     _____BUTZ_____, J.

We concur:

_____RAYE_____, P. J.

_____DUARTE_____, J.

11