Filed 4/14/16  P. v. Ramos CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>FRANKIE RAMOS,<br><br>    Defendant and Appellant. | F070133<br><br>(Super. Ct. No. BF154662A)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Kelly C. Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Lewis A. Martinez and Gregory B. Wagner, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Franson, Acting P.J., Peña, J. and Smith, J.

A jury convicted appellant Frankie Ramos of possession of methamphetamine (count 1/Health & Saf. Code, § 11377, subd. (a)) and resisting arrest (count 2/Pen. Code, § 148, subd. (a)(1)).[1]  In a separate proceeding, the court found true three prior prison term enhancements (§ 667.5, subd. (b)) and allegations that Ramos had a prior conviction within the meaning of the three strikes law (§ 667, subds. (b)-(i)).

On August 26, 2014, the court sentenced Ramos to an aggregate nine-year prison term consisting of the aggravated term of three years on his possession of methamphetamine conviction, doubled to six years because of Ramos's strike conviction, three one-year prior prison term enhancements, and a concurrent one-year term on his resisting arrest conviction.

On September 19, 2014, Ramos filed a timely appeal.

On January 5, 2015, after granting Ramos's petition for resentencing pursuant to section 1170.18, subdivision (f), the court recalled and vacated his sentence.  The court then struck the prior strike conviction and the three prior prison term enhancements, reduced his possession of methamphetamine conviction to a misdemeanor, and sentenced him to one-year local time on his possession of methamphetamine conviction, which the court deemed to have been served in full.  The court also placed Ramos on parole for one year.

On appeal, Ramos contends the evidence is insufficient to sustain his conviction for possession of methamphetamine.  We affirm.

## FACTS

Kern County Sheriff's Deputy Timothy Monsibais testified that on April 29, 2014, at approximately 11:45 p.m., he was on patrol with his partner Deputy Anthony Diehm when he saw Ramos riding a bicycle without a rear reflector.  Ramos was riding

---

[1]    All further statutory references are to the Penal Code.

2

westbound on the north side of Pacific Drive. As Deputy Diehm stopped the patrol car and shined a spotlight on Ramos, Deputy Monsibais got out and yelled at Ramos to stop. Ramos was facing north, and turned his head in the direction of the deputies.[2] Deputy Monsibais then noticed a white earbud earphone coming down the side of Ramos's face toward his neck. Ramos took off running eastbound to the intersection of Pacific Drive and West Drive, and then north on West Drive. Meanwhile, Deputy Diehm backed up into the intersection and then drove northbound on West Drive as he pursued Ramos. Deputy Monsibais temporarily lost track of Ramos when he dropped some equipment and stopped to pick it up. When he resumed the pursuit, he saw Deputy Diehm driving west into an alley located on the north side of Pacific Drive. Deputy Monsibais caught up to Deputy Diehm and assisted in handcuffing Ramos, who was already on the ground. After the deputies helped Ramos stand up, Deputy Monsibais searched him while Deputy Diehm retraced the path that Ramos had run. Deputy Monsibais then went to where Deputy Diehm said he found something and saw white earbud earphones on the ground located a foot away from a transparent yellow bag that contained a white crystalline substance. Both items were located on the street, east of the northwest corner of the intersection of Pacific Drive and West Drive, three to four feet from the curb. The yellow bag was formed in the shape of a ball and weighed a total of four grams. It was clean and there was no debris on top of it.

Deputy Monsibais testified as an expert that three grams of methamphetamine was enough for 30 doses, and that he had never found that much methamphetamine just lying on the ground. No paraphernalia for ingesting the methamphetamine was found on Ramos, nor did Deputy Monsibais find anything that the earbuds could be plugged into. The deputies arrested Ramos in a high crime area.[3]

---

[2] Deputy Diehm testified he pulled up parallel to Ramos and that Ramos was approximately 20 feet away when he turned and looked at the deputies.

[3] Deputy Diehm described the area as a "very high gang and drug area."

Deputy Diehm testified he pursued Ramos as he ran north on West Drive and then west, 10 to 15 feet into the alley located north of Pacific Drive where Ramos stopped, turned around, and placed his hands in the air. Deputy Monsibais helped Deputy Diehm handcuff Ramos. Deputy Monsibais placed Ramos in the back of their patrol car while Deputy Diehm retraced Ramos's steps looking for anything Ramos may have discarded. Deputy Diehm located the earbud earphones and the yellow baggie on the roadway toward the northwest corner of the intersection of Pacific Drive and West Drive along the path where Ramos had run. Deputy Diehm also did not see any dirt or debris on top of the baggie and it did not appear to him that the baggie had been out on the street very long. In over five years of police work, Deputy Diehm had never found a baggie containing three grams of methamphetamine lying on the ground.

Criminologist Jeanne Spencer testified that substance in the baggie was methamphetamine and weighed 3.11 grams.

## DISCUSSION

Ramos contends the evidence is insufficient to prove that he possessed methamphetamine because there was no evidence he exercised dominion or control over the methamphetamine found on the street. Thus, without evidence that he exercised dominion and control over the methamphetamine found on the street, the evidence failed to establish that he had knowledge of the existence or nature of the methamphetamine found in the baggie. We disagree.

Where the issue raised on appeal is whether there was sufficient evidence to justify a verdict of guilty, we must "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) We use the same standard when circumstantial evidence is reviewed. (*People v. Bean* (1988) 46 Cal.3d 919, 932.) It is the jury, not the appellate

4

court, that must be convinced of the defendant's guilt beyond a reasonable doubt. (*Id*. at p. 933.) For that reason, an appellate court may not substitute its judgment for that of the jury. If the evidence reasonably justifies the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the evidence might also support a contrary finding. (*Ibid*.)

"The essential elements of possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially.'" (*People v. Palaschak* (1995) 9 Cal.4th 1236, 1242.)

In *People v. Hutchinson* (1969) 71 Cal.2d 342 (*Hutchinson)*, the mother of the 18-year-old defendant discovered marijuana in a closet and under a bed in a bedroom that the defendant shared with two brothers and a stepbrother. Two of these boys were "away on vacation" in the week preceding the discovery of the contraband, but the night before the discovery, "friends of [the] defendant and his brothers and sisters had visited the ... house for a swimming party" and "[t]he boys who attended such swimming parties dressed and undressed in the ... bedroom [where the marijuana was found.]" (*Id*. at pp. 344-345). Our Supreme Court stated that if the evidence had shown only the "opportunity of access" to the marijuana that was hidden where it was found in the shared room, a finding of unlawful possession would not be supported. (*Id*. at pp. 345-346.) However, the fact that the defendant fled through his bedroom window when his mother threatened to call the police was sufficient additional evidence from which to draw an inference of consciousness of guilt and to support the verdict. (*Id*. at p. 346.) The court stated: "The jury was not required to accept [the] defendant's explanation that his flight was motivated only by a wish to escape from his mother's emotional outburst. The jury could reasonably infer that his flight reflected consciousness of guilt and that he therefore knowingly possessed the marijuana found in the bedroom and closet." (*Ibid*.)

5

Thus, in *Hutchinson*, the evidence was sufficient to establish possession where: (1) there was proof of the defendant's opportunity of access to a place where narcotics were found; and (2) there was conduct by the defendant indicating a consciousness of guilt.

Here, although the methamphetamine was found on the street, the record shows Ramos had the opportunity to drop it there because it was found along the path Ramos ran in attempting to evade Deputies Monsibais and Diehm. Additionally, the jury reasonably could have found that Ramos exhibited a consciousness of guilt when he fled from the officers. (*People v. Moon* (2005) 37 Cal.4th 1, 27-28.) Thus, like the defendant in *Hutchinson*, Ramos had the opportunity to place the contraband where it was found and, like the defendant in *Hutchinson*, Ramos exhibited a consciousness of guilt through his flight. However, there are additional circumstances here that support a finding that Ramos possessed the methamphetamine before dropping it on the street. The earbuds Ramos had been wearing when the officers first saw him were found on the street within two feet of the methamphetamine. (Cf. *People v. Rushing* (1989) 209 Cal.App.3d 618, 622 [discovery of drugs near the defendant's personal effects was a circumstance that supported a finding that the defendant possessed the drugs].) The baggie containing the methamphetamine was not dirty or covered with debris (cf. *People v. Beachem* (1963) 220 Cal.App.2d 460, 461-462 [bindle's clean and untrampled condition was a circumstance that supported finding that the defendant possessed bindle of heroin found discarded on ground]). Additionally, the jury could reasonably have found that Ramos's sudden surrender shortly after he ran by the location where the methamphetamine was found indicated that he only fled from the deputies so that he could dispose of it. Further, the bindle contained 3.1 grams of methamphetamine that was worth at least $300 and the officers testified that neither of them had ever found such a large amount of methamphetamine just lying on the ground. Thus, the record contains ample evidence that supports a finding that Ramos was in actual possession of the methamphetamine

6

before he discarded it during his flight from the deputies. Moreover, the jury could also infer from the above circumstances and from Ramos discarding the methamphetamine that he was aware of its nature as a controlled substance and of its presence on his person prior to discarding it.

Ramos contends *Hutchinson* is distinguishable because: (1) the marijuana was found under the defendant's bed, an intimate space to which the defendant had unfettered access and where an inference of dominion and control is strongest; (2) only a limited number of people had access to the areas where the marijuana was found whereas, here, any number of people had access to the location on the street where the methamphetamine was found; and (3) the defendant in *Hutchinson* admitted being familiar with marijuana, whereas Ramos did not. We disagree.

The *Hutchinson* court found that the defendant and others had access to the marijuana and that none of them had exclusive control. Nevertheless, as discussed above, the court relied on only two circumstances to find the evidence sufficient to sustain the defendant's possession conviction: (1) the defendant's opportunity of access to the places where the marijuana was found; and (2) the consciousness of guilt he exhibited through his flight. (*Hutchinson*, *supra*, 71 Cal.2d at pp. 345-346.)

Further, the evidence of possession is greater here than in *Hutchinson*. Unlike *Hutchinson*, where the evidence established that several people besides the defendant had access to locations where the marijuana was found, the evidence here raised only the possibility that other people had been in the area where the methamphetamine was found. "But a mere possibility affords no evidence whatever. [Citation.] 'Mere conjecture, surmise, or suspicion is not the equivalent of reasonable inference and does not constitute proof.'" (*People v. Blinks* (1958) 158 Cal.App.2d 264, 266.) This principle is particularly applicable here because the baggie was found to be clean and free of debris, indicating that it had not been lying on the street very long.

7

Moreover, there was evidence that Ramos was familiar with methamphetamine. As noted earlier, the jury could reasonably infer from the consciousness of guilt Ramos exhibited in fleeing from the officers that he was familiar with methamphetamine, knew it was illegal to possess it, and that it was this knowledge that caused him to drop it. Thus, we conclude the evidence supports Ramos's conviction for possession of methamphetamine and that his conviction of this offense does not violate his right to due process.[4]

## DISPOSITION

The judgment is affirmed.

---

[4] Ramos also attempts to distinguish *People v. Beachem*, *supra*, 220 Cal.App.2d 460 and *People v. Blinks*, *supra*, 158 Cal.App.2d 264, two cases cited by respondent. We need not discuss these cases because we find it unnecessary to rely on them in addressing Ramos's sufficiency of evidence claim.