Filed 8/3/16  P. v. Smith CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JERRY SMITH,<br><br>    Defendant and Appellant. | F071775<br><br>(Super. Ct. No. SF017478A)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Gregory B. Wagner, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Franson, J. and Smith, J.

Appellant Jerry Smith appeals his conviction for possessing marijuana in prison (Pen. Code, § 4573.8). Appellant contends insufficient evidence was presented to conclude he knew the substance he possessed was a narcotic. Separately, appellant contends his due process rights were violated because video evidence of his alleged crime was not preserved by the prosecution. For the reasons set forth below, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On June 9, 2013, appellant was confined as an inmate at Wasco State Prison. That day he received a visitor, whom he met in visiting room A. The visitation was monitored in a separate room through video surveillance by California Department of Corrections and Rehabilitation (CDCR) Correctional Officers Margarita Pedraza and Tobias Towle.

Via the video feed, Officers Pedraza and Towle observed the visitor remove a small, black, cylindrical object from her waist band and place it in appellant's rear pocket. Appellant and the visitor then moved to seats near a table. Appellant withdrew the object from his pocket, placed it inside of his pants, and appeared to be moving in a manner consistent with an attempt to hide the object in his anus.

Officers Pedraza and Towle then intervened. They took appellant and his visitor to separate locations and conducted an over-the-clothing search of each. Nothing was found. Appellant was then passed to Correctional Officer Antonio Medina for visual supervision. Officer Medina inspected a noncontact visiting booth, which is a single person room, accessed by a door, that contains a metal stool and is used by inmates to communicate with visitors through a glass partition. Finding nothing in the booth, Officer Medina placed appellant inside and monitored him through a window. Officer Medina could not see appellant's hands during this time, but did see appellant leaning back while sitting on the stool.

When it came time to remove appellant from the noncontact visiting booth, Officer Medina opened the door and instructed appellant to exit. As appellant exited the

booth, Officer Medina saw him drop a black package onto the floor, near the metal stool. A subsequent unclothed body search conducted by Officer Towle again found no contraband on appellant. The dropped package was recovered, inspected, and tested. It was found to contain 27.56 grams of marijuana.

Prior to trial, appellant moved in limine to exclude any evidence describing what Officers Pedraza and Towle saw on the video surveillance system. Appellant argued the CDCR had an obligation to preserve any recordings made and noted that a July 2013 note indicated appellant had requested any existing video but was not provided it at his administrative hearing.[1] The People responded that their investigation showed no signs an actual recording had been made at any point. The trial court, accepting this representation, denied appellant's motion. At trial, testimony showed that the video surveillance system is connected to a digital video recorder (DVR) that stores video in a 12-day loop, with new video overwriting what was recorded 12 days ago. However, due to the age of the system, there is no way to extract video. Rather, to obtain a recording one would have to place a camera in front of the display screen and separately record what is being shown.[2]

Appellant was convicted of possessing marijuana in prison. In bifurcated proceedings, he was found to have ten prior convictions. Appellant received a 25-year-to-life sentence. This appeal timely followed.

### DISCUSSION

_**Sufficiency of Evidence That Appellant Knew He Possessed Marijuana**_

Appellant argues the evidence presented at trial was insufficient to prove he

---

[1]    There is no indication in the record when this request was first made.

[2]    Although a DVR system was mentioned, there was no testimony on whether playback of recorded material was possible. The only testimony on what could be recorded came from Officer Pedraza, who testified you would have to record the live feed directly.

3

knew the object he possessed contained marijuana, as opposed to some other banned contraband.

*Standard of Review and Applicable Law*

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one. ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Smith* (2005) 37 Cal.4th 733, 738-739 (*Smith*).)

*Sufficient Evidence Supports the Jury's Verdict*

Penal Code section 4573.8 penalizes any person who knowingly has drugs, in any manner, in his or her possession in any state prison. (Pen. Code, § 4573.8.) Convictions under drug possession statutes such as this generally require the presence of a usable quantity of drugs, along with knowledge of possession and knowledge that the object possessed was a narcotic, all of which can be proven by circumstantial evidence. (See *People v. Palaschak* (1995) 9 Cal.4th 1236, 1242.)

Appellant concedes, as he must, that circumstantial evidence may be used to demonstrate knowledge and that, in proper circumstances, conduct may be sufficient to show knowing possession of a narcotic. Yet he argues that the circumstances in this case do not support a reasonable inference that appellant knew he possessed marijuana. We do not agree.

Viewing the evidence in the light most favorable to the verdict, appellant was seen obtaining and attempting to hide a small package later found to contain marijuana. When confronted and subjected to search, appellant attempted to dispose of the container. Given that the "mere possession of a narcotic constitutes substantial evidence that the possessor of the narcotic knew of its nature," the jury could reasonably infer from

4

appellant's conduct that he knew the object passed to him contained marijuana. (*People v. White* (1969) 71 Cal.2d 80, 83.) While it is true, as appellant argues, that the package could have contained many banned items, the fact that it ultimately contained marijuana, coupled with the reasonable inference from the evidence that appellant intended to receive the package from his visitor, supports the more specific inference that appellant knew he was obtaining the marijuana that was found.

## *Alleged Due Process Violation for Destruction of Evidence*

Appellant also argues that the CDCR's failure to preserve videotape evidence of the visiting room interactions between appellant and his visitor violated appellant's right to due process of law.

### *Standard of Review and Applicable Law*

As a general rule, the duty of law enforcement agencies to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense." (*California v. Trombetta* (1984) 467 U.S. 479, 488 (*Trombetta*).) To protect against the real burden that would arise from an "absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance," courts use a sliding scale when analyzing a failure to maintain evidence. (*Arizona v. Youngblood* (1988) 488 U.S. 51, 58 (*Youngblood*).) Where the lost evidence possesses "an exculpatory value that was apparent before the evidence was destroyed" and is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means," there is a due process violation regardless of the reasons why the evidence was destroyed. (*Trombetta*, *supra*, 467 U.S. at p. 489.) However, when the evidence is merely "potentially useful," for example where "no more can be said than that it could have been subjected to tests, the result of which might have exonerated the defendant," a defendant must also show "bad faith" on the part of law enforcement to demonstrate a due process violation. (*Youngblood*, *supra*, 488 U.S. at p. 57-58; *People v. DePriest* (2007) 42 Cal.4th 1, 41-42.)

5

"On review, we must determine whether, viewing the evidence in the light most favorable to the superior court's finding, there was substantial evidence to support its ruling" regarding whether a due process violation occurred. (*People v. Roybal* (1998) 19 Cal.4th 481, 510.)

*Substantial Evidence Supports the Trial Court's Decision*

On appeal, appellant makes no argument that the video footage from the visiting room possessed an exculpatory value that was apparent before any alleged destruction. In our own review, we found no such evidence either. Video evidence is not, in all instances, readily apparent as exculpatory evidence. In *People v. Alvarez*, for example, the court was unable to find that lost video evidence possessed apparent exculpatory value even when the defendant immediately insisted upon capture that the video would prove he committed no wrong. (*People v. Alvarez* (2014) 229 Cal.App.4th 761, 776.) Given that appellant does not argue on appeal that the exculpatory value of the video was apparent, and because there is no presumption of such a fact, we consider appellant's contentions under the *Youngblood* standard for "potentially useful" evidence.

Appellant contends the visiting room video was both potentially useful to the defense and destroyed in bad faith. As the video could have been analyzed and compared to the officers' stated reasons for detaining and searching appellant, we have no difficulty agreeing with appellant that a recorded video of the encounter would have been potentially useful evidence for the defense. We find, however, that substantial evidence supports the conclusion that there was no bad faith destruction of evidence.

The evidence presented prior to trial suggested a scenario where video surveillance was known to occur, but no recordings were present. The prosecutor confirmed he had no information that any type of videotape was ever in the CDCR's possession, that he had requested any videotapes, and that there was nothing to provide. At trial, more details were revealed. It was confirmed that no videotape existed because video could not be downloaded from the DVR attached to the surveillance system. In

6

addition, while evidence showed the DVR held data for 12 days before it was recorded over, there was no evidence presented that this data could be reviewed or recorded. Rather, the only evidence suggesting video could have been collected showed the live feed could only be recorded if a separate stand-alone camera was pointed at the monitor.

"The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." (*Youngblood*, *supra*, 488 U.S. at pp. 56-57, fn. *.) Viewing the evidence in the light most favorable to the trial court's ruling, the relevant time frame for determining whether a bad faith destruction of evidence occurred was the moment the surveillance took place. This is so because there is no record evidence showing that the video surveillance could have been preserved by later techniques had a camera not been pointed at the live monitor at all times. Under this timeframe, there is no evidence of bad faith destruction. With no camera recording at the time, there was no evidence to preserve. We see no reason why unrecorded surveillance should be treated any different than direct observation in this specific context—it is not evidence in need of preservation as it is flowing through to the monitor.[3] As no evidence existed that must be preserved, the evidence supports the trial court's conclusion that no bad faith destruction occurred.

We note that, under the facts before us, our opinion would not change should the video be deemed capable of preservation and immediately destroyed or deemed destroyed at the point it was taped over, 12 days later. If the video is viewed as capable of preservation, but destroyed when not immediately recorded, there is no evidence

---

[3]    We do not intend to suggest that once video is actually recorded in a manner subject to preservation there is no duty to preserve the video. We merely conclude that, on a record such as this, where the evidence does not support the conclusion that anything other than a live feed was recoverable, the evidence generated is equivalent to live observations and not to a recording.

demonstrating the CDCR allowed the video to be destroyed due to bad faith, as opposed to mere negligence in not always having a recording system available. (*Youngblood*, *supra*, 488 U.S. at p. 58 [finding failure to refrigerate clothing and perform tests negligent at worst, thus confirming no due process violation].) Officers have no way to know whether each unfolding moment of a general surveillance shift might be expected to play a significant role in an unknown suspect's defense to any later charges, and cannot be expected to anticipate whether each moment following the identification of a potential violation should be recorded. Thus, substantial evidence supports a finding of no bad faith.

Even if we were to consider the video to have been preserved on the DVR but destroyed when recorded over 12 days later, the record still lacks evidence of bad faith. Although appellant argues the video was destroyed despite a request for use at his initial administrative hearing, the record does not reflect when that request was made. The only evidence in the record is a representation from the prosecutor that shows the request was rejected sometime in July 2013. As the incident occurred on June 9, 2013, the video would have been taped over by June 21, 2013. With no evidence to show the correctional officers were aware of any potentially exculpatory value to the video as of June 21, 2013, the available evidence supports the conclusion they did not act in bad faith.

Substantial evidence thus supports the trial court's conclusion that no due process violation occurred. Having considered the full scope of appellant's argument on appeal and finding no error, we need not reach his ineffective assistance of counsel argument. (*People v. O'Malley* (2016) 62 Cal.4th 944, 1010 fn. 12.)

## DISPOSITION

The judgment is affirmed.

8